290 F.3d 639
 Joyce K. DENNIS, Plaintiff-Appellee,
v.
COLUMBIA COLLETON MEDICAL CENTER, INCORPORATED, Defendant-Appellant, and
Columbia HCA Healthcare Corporation, of South Carolina; Walterboro Community Hospital, Incorporated; Colleton Medical Center; Healthtrust, Incorporated, Defendants.
Joyce K. Dennis, Plaintiff-Appellant,
v.
Columbia Colleton Medical Center, Incorporated, Defendant-Appellee, and
Columbia HCA Healthcare Corporation, of South Carolina; Walterboro Community Hospital, Incorporated; Colleton Medical Center; Healthtrust, Incorporated, Defendants.
 No. 01-1338.
 No. 01-1350.
 United States Court of Appeals, Fourth Circuit.
 Argued January 22, 2002.
 Decided May 16, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED ARGUED: M. Dawes Cooke, Barnwell, Whaley, Patterson & Helms, L.L.C., Charleston, South Carolina, for Appellant. Margaret D. Fabri, Charleston, South Carolina, for Appellee. ON BRIEF: Lucinda Gardner Wichmann, Barnwell, Whaley, Patterson & Helms, L.L.C., Charleston, South Carolina; Mark E. Edwards, Jeanne Casstevens Thomas, Nashville, Tennessee, for Appellant.
 Before WILLIAMS and KING, Circuit Judges, and CYNTHIA HOLCOMB HALL, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.
 Affirmed by published opinion. Senior Judge CYNTHIA HOLCOMB HALL wrote the opinion. Judge KING wrote an opinion concurring in part and dissenting in part. Judge WILLIAMS wrote an opinion dissenting in part and concurring in part in the judgment.
 OPINION
 CYNTHIA HOLCOMB HALL, Senior Circuit Judge.
 
 
 1
 Appellant/Cross-Appellee Columbia Colleton Medical Center ("Colleton") employed Appellee/Cross-Appellant Joyce Dennis as an emergency room registration clerk. In June 1997, Dennis was passed over for promotion to the position of registration supervisor in favor of an outside candidate, Johnny Bridge. Dennis brought suit pursuant to Title VII, 42 U.S.C. § 2000e, alleging discrimination based on gender. After a trial in which the jury found in favor of Dennis, Colleton filed motions for judgment as a matter of law and a new trial, which were denied. Colleton appeals the denial of its post-trial motions, as well as the district court's award of back pay and assessment of attorney's fees. Dennis cross-appeals the district court's post-trial reduction of a $25,000 jury award for emotional distress. We affirm.
 
 I.
 
 2
 In May 1996, Dennis was employed by Colleton as a part-time emergency room registration clerk. At the time she was hired, Dennis was a 19-year-old high school graduate who had worked a number of service jobs and was enrolled in an Emergency Medical Services ("EMS") training course. On January 20, 1997, Dennis transferred to a full-time position as a technician in the Labor and Delivery Department. On March 30, 1997, Dennis returned to the emergency room as a full-time registration clerk. For the roughly 15 months that she worked at the hospital, Dennis was a diligent and hardworking employee who generally earned positive assessments for her work.
 
 
 3
 At the time of Dennis' transfer back to the emergency room, management of the Registration Department was in a state of some disarray. Either during or soon after her return, a new registration supervisor was hired. The supervisor had difficulty coping with the position and abruptly resigned on June 15, 1997, leaving the department without a supervisor. During an approximately eight week period when the department was without a formal supervisor, Dennis would periodically carry out some supervisory duties, including training new employees and fielding operational questions.
 
 
 4
 Dennis applied for the position of registration supervisor once it was formally opened. On June 20, 1997 she interviewed with Jennifer Wray, the decision-maker normally responsible for filling this position. During the interview, Wray made an inappropriate comment suggesting that although she would personally like to promote her, Dennis would not get the promotion due to an affair she was rumored to be having with a doctor. Dennis denied the affair and complained to Jimmy Hiott, Colleton's chief financial officer and Wray's direct superior. After consulting with colleagues in senior management, Hiott chose to reprimand Wray and take over the selection process himself.
 
 
 5
 The process that Hiott applied was peculiarly informal. Hiott reviewed Dennis' initial application to the hospital, but did not personally interview her. Nor did he inquire into her experience since joining the hospital or check her references or evaluations. Hiott did however interview Bridge, a 32-year-old who was at that time working full-time as a transportation and computer manager at Clean Management Environmental Group. Bridge's wife had worked at Colleton in data processing and was acquainted with Hiott. Bridge himself also had some extremely limited experience at Colleton working as a part-time "PRN PBX operator," which entailed operating the PBX switch-board system nights and weekends on an "as needed" basis. Because the PBX was physically near Registration, he also received some registration training and worked a few shifts in Registration on an informal basis. The record is unclear as to whether Bridge formally applied for the supervisor's position and as to how Hiott became aware that he would be interested in it.
 
 
 6
 In addition to Dennis and Bridge, the record also offers disputed evidence of a third candidate, Tonya Williams, who was then working at Colleton's business office. Williams, an African-American woman, had roughly seven years experience working in Registration, a degree in computer technology and, unlike either Dennis or Bridge, met the formal requirements for the supervisory position. Hiott claimed that he was never made aware of Williams' application, and Colleton offered supporting evidence that it may have been submitted or at least discovered by the head of human resources after the position was already filled. However, the date on William's transfer request form was timely, and the director of human resources testified at deposition that she had forwarded the application to Wray. Although she later claimed that this was after the position was already filled, Wray did know about Williams' interest in the position before Hiott took over the hiring process because she conducted an interview with her on the same day that she interviewed Dennis.
 
 
 7
 In any event, Hiott awarded the position to Bridge. His proffered explanation was that he selected Bridge for his management and computer skills. Hiott claimed at trial that at the time of the decision he was aware that Registration needed someone with such skills in order to reform a badly disorganized department and oversee a planned change in computer systems. He asserted that he had posed various hypothetical problems to Bridge during his interview and had been highly impressed by his answers. Based on this favorable impression and his prior knowledge of Bridge's affinity for computers, he offered him the job.
 
 
 8
 Dennis was not as impressed. After learning of the promotion decision, she quit her position at Colleton and filed an EEOC charge and subsequent suit alleging discriminatory failure to promote as well as defamation. Colleton moved for summary judgment on all causes of action, and the motion was granted on April 6, 2000. However, Dennis filed a motion for reconsideration on June 23, 2000, based on the Supreme Court holding in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). On August 14, 2000, the district court reversed its previous order except as to the defamation charge.
 
 
 9
 The case was then tried to a jury except the issues of compensatory front pay and back pay, which the parties agreed to have tried separately before the district court judge. After Colleton's motion for judgment as a matter of law was denied, the jury found in favor of Dennis on the discrimination claim and awarded $25,000 in compensatory damages for emotional distress. After a separate hearing, the district court awarded $31,302 in back pay. It also granted $104,765.80 in attorney's fees and costs.
 
 
 10
 Following the trial, Colleton filed a renewed motion for judgment as a matter of law and a motion for a new trial. The district court denied both motions, but granted a request to nullify the jury's $25,000 award for emotional distress.
 
 II.
 A. MOTION FOR JUDGMENT AS A MATTER OF LAW
 
 11
 Colleton appeals the district court's denial of its motion for judgment as a matter of law. A Rule 50(b) motion for judgment as a matter of law follows the same standard as a Rule 56 motion for summary judgment. When reviewing a district court's ruling, we apply the same standards de novo. Brown v. CSX Transportation, Inc., 18 F.3d 245, 248 (4th Cir.1994); Taylor v. Virginia Union University, 193 F.3d 219, 230 (4th Cir.1999). In doing so, we must view the evidence in the light most favorable to Dennis, the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility. See Baynard v. Malone, 268 F.3d 228, 234 (4th Cir.2001). "The question is whether a jury, viewing the evidence in the light most favorable to [Dennis], could have properly reached the conclusion reached by this jury." Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir.1995). We must reverse if a reasonable jury could only rule in favor of Colleton; if reasonable minds could differ, we must affirm. Sales v. Grant, 158 F.3d 768, 775 (4th Cir.1998); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that judgment as a matter of law is proper if "there can be but one reasonable conclusion as to the verdict.").
 
 1. Qualifications
 
 12
 Colleton first argues that Dennis failed to offer sufficient evidence to make out a prima facie case of gender discrimination. We begin by noting that while this argument is couched in terms of the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that approach is inapposite when a trial has proceeded to completion. Gibson v. Old Town Trolley Tours of Washington D.C., 160 F.3d 177, 180 (4th Cir.1998). At trial, Dennis shed the intermediate burdens of McDonnell Douglas, and faced the ultimate burden of proving her case. Thus, we treat Colleton's claim on appeal as alleging that no reasonable jury could have found discrimination in failing to promote Dennis for the reason that she was plainly unqualified for the job.
 
 
 13
 We disagree. It is true that Dennis did not satisfy all of the criteria in the written job description for the registration supervisor's position. But, like Dennis, Bridge also lacked certain formal qualifications. Colleton listed the education and experience requirements for the position as follows:
 
 A. Education
 
 14
 1. High School graduate.
 
 
 15
 2. Preferably courses in medical terminology management, or comparable experience.
 
 
 16
 3. College business courses and/or courses in a medically related field preferred.
 
 B. Experience
 
 17
 1. Minimum three years experience in a hospital business office setting.
 
 
 18
 2. Management experience preferred.
 
 
 19
 3. Minimum three years experience in third party reimbursement requirements (i.e., Medicare, Medicaid, Champus, HMO's, PPO's, and Commercial).
 
 
 20
 4. Excellent communication skills.
 
 
 21
 5. Basic knowledge of computers required.
 
 
 22
 6. Prefer ICD-9 coding knowledge.
 
 
 23
 7. H-BOSS experience highly desirable.
 
 
 24
 It is undisputed that neither candidate satisfied all of these requirements. Neither had three years experience in a hospital business office or in third party reimbursement requirements. Neither had college business courses or courses in medical terminology management, although Dennis did have EMS training.
 
 
 25
 At the same time, Dennis arguably satisfied the written requirements as a whole better than Bridge, who had some limited management experience elsewhere, but who had less hospital experience and lacked familiarity with ICD-9 coding (a system for coding diagnoses for insurance purposes) and H-BOSS (Registration's computer data base). Except for three years' job experience, Dennis also met all of the criteria listed as mandatory.
 
 
 26
 The fact that Bridge was hired despite himself lacking several formal qualifications listed as required demonstrates that they were not mandatory in the actual case. Rather, the job description was at most treated as a list of desirable qualifications. Because Dennis demonstrated that she satisfied this aspirational list at least as well as Bridge, she produced sufficient evidence for a reasonable jury to conclude that she was qualified for the job.
 
 2. Pretext
 
 27
 Colleton's primary argument is that the case presented by Dennis was based solely on prima facie evidence of the candidates' qualifications and evidence tending to disprove Hiott's claimed reasons for hiring Bridge. Colleton claims that this was insufficient evidence for a reasonable jury to find discrimination. Again, we disagree.
 
 
 28
 Under the McDonnell Douglas framework, once an employer has met its burden of producing a legitimate nondiscriminatory explanation for its decision, the plaintiff is afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). That is, Dennis could attempt to establish that she was the victim of intentional discrimination by "showing that the employer's proffered explanation is unworthy of credence." Id. at 256, 101 S.Ct. 1089. The first thrust of Colleton's argument is that Dennis failed to make a sufficient showing that Colleton's proffered reason for hiring Bridge was false.
 
 
 29
 Dennis did provide sufficient evidence of falsity. First, she provided evidence that Hiott offered inconsistent justifications for his promotion of Bridge. At deposition, Hiott claimed that it was only Bridge's managerial experience that made him a superior candidate.[1] At that time, he was unable to recall many details about the hiring process. However, when testifying at trial over a year and a half later (and after Bridge had moved to a position in information technologies within the hospital), Hiott's memory of the details of the hiring process seemed to dramatically improve, and he asserted that it was both managerial experience and computer knowledge that set Bridge apart. Both of these explanations, of course, differed from the written job qualifications, giving them the flavor of post-hoc rationalizations.[2] The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext, EEOC v. Sears Roebuck, 243 F.3d 846, 852-53 (4th Cir.2001), and indeed the district court reports that the jury did appear to take note of these inconsistencies, asking to rehear relevant portions of Hiott's trial testimony and deposition.
 
 
 30
 Equally importantly, Dennis' evidence of the unequal way in which Hiott conducted the promotion process could have persuaded the jury that Bridge did not give Dennis fair consideration but rather discriminated against her. While Hiott appeared to take the initiative with Bridge, seeking out his candidacy and intensively interviewing him, he did not even look into Dennis' in-house work experience, training or evaluations. Hiott claimed to dismiss Dennis' application for lack of management experience without knowing the full extent of that experience. Dennis also presented evidence tending to suggest that the other female applicant, Williams, may have been denied fair consideration despite the fact that she was the only candidate possessing all of the written job qualifications. In light of this evidence, the jury could reasonably have concluded that Hiott never gave Dennis fair consideration because he had already decided for other reasons not to promote her, and that his proffered explanations for his choices were merely post-hoc pretexts covering a predisposition favoring Bridge as a male.
 
 
 31
 Finally, Dennis also presented sufficient evidence for the jury to have concluded that Bridge's management and computer skills were overplayed by Hiott. Bridge's only verified management experience consisted of managing a small Family Dollar store for eleven months more than four years earlier. He received an "F" in the only computer course he ever took. While it is certainly possible, as Colleton argued, that this grade was not reflective of his computer knowledge at the time he was hired, this was an issue for the trier of fact. On review, we are limited to concluding that the jury could have determined based on the facts at trial that Hiott did not hire Bridge due to his allegedly superior skills.[3]
 
 
 32
 In disputing this conclusion, Colleton would have us apply a test allegedly derived from Deines v. Texas Dept. of Protective Services, 164 F.3d 277, 280-81 (5th Cir.1999), requiring a plaintiff to make an evidentiary showing that the superiority of her qualifications are so substantial as to "jump off the page and slap [you] in the face" before a jury may find pretext. See also Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11 Cir.2000). This argument misapprehends either the holdings of Deines and Lee or Dennis' evidence of pretext. Deines and Lee require judges and juries in those Circuits to be "slapped in the face" only when the sole evidence of pretext is the superior qualifications of the plaintiff. While Dennis, like most Title VII plaintiffs, argues that her qualifications were superior or at least equal to those of the person given preference over her, the jury's finding of pretext does not stand or fall on this claim.
 
 
 33
 The second thrust of Colleton's argument is that even if the jury could disbelieve Hiott's explanations, Dennis' evidence — limited as it was to her prima facie case and facts tending to discredit those explanations — was still insufficient to support her ultimate burden of demonstrating discrimination.
 
 
 34
 In analyzing this issue, we are guided by the Supreme Court's decision in Reeves, which holds that "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. at 147, 120 S.Ct. 2097. See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Reeves court noted that "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff." 530 U.S. at 146, 120 S.Ct. 2097. However, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Id. at 147, 120 S.Ct. 2097. This follows both from the strength of the prima facie evidence in creating an inference of discrimination, and "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." Id. (internal quotations omitted).[4]
 
 
 35
 In fleshing out how to apply this rule, Reeves also provides two examples of situations when a plaintiff's showing may not be enough to support a jury verdict in its favor: "[A]n employer would be entitled to a judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Id. at 148, 120 S.Ct. 2097 (underlining added). We note that these examples are not meant to be exhaustive. Reeves specifically leaves open the possibility that other circumstances could entitle an employer to judgment as a matter of law. Thus, it instructs more broadly that factors on which the appropriateness of a judgment as a matter of law will depend in any case will include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49, 120 S.Ct. 2097.
 
 
 36
 At the same time, while not exhaustive, the examples provided in Reeves do preclude us from ordering judgment as a matter of law when a defendant has merely made a lesser evidentiary showing of the very same factors they include. That is, such a judgment requires a more conclusive evidentiary showing by Colleton than the mere presentation of circumstances suggesting possible alternatives to both discrimination and its proffered nondiscriminatory reason for preferring Bridge. They also require more than the mere presentation of less than "abundant" and "uncontroverted" evidence that discrimination did not occur in combination with a weak showing of pretext by Dennis. To grant judgment as a matter of law under such circumstances would be to intrude on the jury function by substituting our own judgment for that of the finder of fact.
 
 
 37
 In light of this guidance, we conclude that Colleton does not satisfy the threshold for judgment as a matter of law. The circumstances of Dennis' case suggest some possible alternatives to both Hiott's explanation and gender discrimination; namely that Dennis' reputed affair actually did block her promotion as Wray warned it would, or that Hiott's relation to Bridge's wife played a prominent role in his decision.[5] However, the evidence of a possible third explanation was far from "conclusive." Nor do we find the testimony that a number of senior managers elsewhere at the hospital were women and that Hiott did once hire a woman as registration supervisor so substantial as to constitute "abundant and uncontroverted" evidence that Hiott acted lawfully in this case. Even together, these showings were not sufficient to compel a rational jury weighing the credibility of testamentary evidence to find that there was no discrimination against Dennis. We therefore find no sufficient basis to order judgment as a matter of law.
 
 B. MOTION FOR A NEW TRIAL
 
 38
 Colleton next appeals the district court's denial of its motion for a new trial. Unlike the procedure under Rule 50(b), on a motion for a new trial under Rule 59(e) a district court is permitted to weigh the evidence. Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir.1994). The court should grant a new trial only if 1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir.2001) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996)). We review the district court's decision not to order a new trial for clear abuse of discretion and will not reverse absent exceptional circumstances. Bristol Steel, 41 F.3d at 186.
 
 
 39
 Colleton's argument on appeal for a new trial largely mirrors that of its appeal for a judgment as a matter of law. In addition to repeating its arguments about the insufficiency of the evidence, it also attacks the district court's instructions to the jury. Specifically, it would have us find the instructions on pretext, which included language taken directly from Reeves, insufficient because they did not include: 1) an instruction that Dennis was required to establish her superiority as a candidate and including the "slap in the face" test, and 2) a "counterbalancing" instruction emphasizing that the jury was not required to conclude Colleton had discriminated when other alternatives to its proffered explanation were available.
 
 The instructions stated:
 
 40
 If you find that the defendant has stated a valid reason, then you must decide in favor of the defendant unless the plaintiff proves by a preponderance of evidence that the stated reason was not the true reason but it is only a pretext or excuse for discriminating against the plaintiff because of her sex.
 
 
 41
 A pretextual reason could be a "sham" reason; a reason that is false or a reason that is true, but not the real reason. While the jury's rejection of defendant's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff, in appropriate circumstances, the jury can reasonably infer from the falsity of explanation that the employer is hiding the truth in order to cover up intentional discrimination. The plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification is false, may permit the jury to conclude that the defendant unlawfully discriminated.
 
 
 42
 The fact that you might think that the employer misjudged the qualifications of the applicants does not in and of itself expose the defendant to Title VII liability, although this may be probative of whether the employer's reasons are pretext for discrimination.
 
 
 43
 As we found no basis in the evidence for ruling that the jury's findings were unreasonable, we also find that the district court did not abuse its discretion in preserving that ruling and denying Colleton's motion for a new trial. The jury instructions were not improper because they clearly and correctly stated the law and made clear that the jury could, but did not have to, infer discrimination if it disbelieved Colleton's explanation for Hiott's decision.
 
 C. BACK PAY
 
 44
 Colleton also claims that the district court's award of back pay should be reversed because Dennis voluntarily quit her job immediately after being denied promotion. In the alternative, Colleton argues that the amount of back pay awarded should have been calculated from the day Dennis left Colleton to January 1, 1998, when Bridge was transferred and the supervisor position again became open. The award granted by the district court calculated back pay from the day Dennis was denied promotion to roughly the date of the final judgment. We review the decision to award back pay for abuse of discretion. Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir.1993); see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 414-19, 424, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).
 
 
 45
 As a general rule, back pay is to be awarded to successful Title VII plaintiffs. See Albemarle, 422 U.S. at 421-22, 95 S.Ct. 2362. Back pay is awarded in furtherance of the objectives of Congress in enacting Title VII to create employer incentives to ensure equality of employment opportunities and to make persons whole for injuries suffered on account of unlawful discrimination. Id. at 418-19, 95 S.Ct. 2362. Back pay "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Id. at 421, 95 S.Ct. 2362.
 
 
 46
 In reviewing awards of back pay, the Fourth Circuit does not apply the "constructive discharge rule" denying such pay to persons who leave an employer who has committed intentional discrimination unless it is under conditions of a constructive discharge. See Spagnuolo v. Whirlpool Corporation 641 F.2d 1109, 1114 (4th Cir.1981). Instead, we simply apply the general statutory duty located at 42 U.S.C. § 2000e-5(g) to mitigate employer damages. Id.
 
 
 47
 In this case, Dennis reasonably mitigated Colleton's damages even though she left its employ. Because she was at a low paying job, she could be reasonably certain of finding equivalent pay elsewhere. After leaving Colleton, Dennis actively applied for other work and quickly did find comparable alternative employment in a doctor's office, and later as an emergency medical technician. Dennis' expert testified that she made substantially more money over the three year period between leaving Colleton and trial than she would have made had she stayed at the hospital after being denied promotion. Dennis' case is thus parallel to the facts in Spagnuolo, where the court refused to overturn an award of back pay to an employee who voluntarily left his employer to work for a higher paying competitor. Id. The district court did not abuse its discretion.
 
 
 48
 As to Colleton's claim that the back pay period should have been tolled when the supervisor's position once again became open, there is no compelling reason to assume that Dennis would have received the job. There is no precedent suggesting that the reopening of a position that was the subject of a discrimination case would toll a back pay period, and we decline to establish such a rule here.
 
 D. ATTORNEY'S FEES
 
 49
 42 U.S.C. § 2000e-5(k) permits a court to award attorney's fees to the prevailing party in a Title VII suit. The purpose of awarding fees is to encourage attorneys to prosecute cases that vindicate the objectives of Title VII though they might be economically unattractive under a contingency fee arrangement. See Daly v. Hill, 790 F.2d 1071, 1076-77 (4th Cir. 1986) (analyzing 42 U.S.C. § 1988); Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (stating that the standard under 42 U.S.C. § 1988 is identical to that of 42 U.S.C. § 2000e-5(k)). Fees should be high enough to encourage attorneys to take cases without awarding windfalls. Martin v. Cavalier Hotel Corp. 48 F.3d 1343, 1359 (4th Cir.1995).
 
 
 50
 In calculating attorney's fees, the Fourth Circuit employs the "lodestar" formula, multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. In making the reasonableness determinations, a court is to use the twelve factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974); Daly, 790 F.2d at 1077-1078. We review the district court's award for abuse of discretion. Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir.1998).
 
 
 51
 In its order, the district court correctly applied the lodestar methodology and explicitly documented its consideration of each of the Johnson factors in determining reasonable hours and fees. While Colleton disputes the district court's judgment in applying several of the Johnson factors, none of the court's assessments were outrageous or provide a basis for a finding of abuse of discretion.
 
 
 52
 Colleton also appears to dispute the finding that Dennis satisfied the requirement that she be a "prevailing party," arguing "Dennis" extremely limited success on her Title VII claim should be tempered by her lack of success on her defamation and constructive discharge claims as well as her lack of success against named defendants other that Colleton." However, Dennis was clearly a "prevailing party" under controlling Court precedent. See Farrar v. Hobby, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("plaintiffs may be considered `prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"); Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (adopting the Black's Law Dictionary definition of "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.").
 
 
 53
 Colleton's appeal may alternatively be read to imply that the district court's calculation of what constituted reasonable hours should have been reduced in recognition that Dennis did not win on all her claims. It is true that "when successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter." Brodziak, 145 F.3d at 197. However, this rule is of no use to Colleton because the district court did explicitly exclude hours worked on Dennis' losing claims from its lodestar calculation.
 
 E. EMOTIONAL DISTRESS
 
 54
 Lastly, we address Dennis' cross-appeal contesting the district court's grant of Colleton's Rule 59(e) motion to alter the judgment by nullifying the jury award for emotional distress. The court nullified the damage award on the basis that Dennis had provided no evidence of emotional distress other than conclusory statements that she was "devastated" and "humiliated" by the events that transpired against her. Dennis claims that she produced adequate evidence with testimony describing the circumstances at Colleton that she found to be distressful and humiliating, the degree of her anticipatory reliance on getting the pay raise associated with the promotion, the added strain felt by her and her family after she left Colleton, and the fact that she was less able to spend time with her child after leaving Colleton due to the fact that she had to take multiple jobs. We review the district court's ruling granting Colleton's Rule 59 motion for abuse of discretion. EEOC v. Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir.1997); Collison v. Int'l Chem. Workers Union, 34 F.3d 233, 236 (4th Cir. 1994).
 
 
 55
 We find that the district court has not abused its discretion. In Price v. City of Charlotte, 93 F.3d 1241 (4th Cir.1996), this court established on the basis of federal importation of tort principles into civil rights claims that "a plaintiff's testimony, standing alone, may support a claim of emotional distress...." 93 F.3d at 1251. However, in such a case, "courts scrupulously analyze an award of compensatory damages." Id. The injured party must "reasonably and sufficiently explain the circumstances of [her] injury and not resort to mere conclusory statements." Id. (internal quotations omitted). The court further explained that these principles established that the injury must be "demonstrable" and that the plaintiff must show a causal connection between the violation and her emotional distress. Id. Moreover, the connection must be between the distress and the violation itself, not the benefit denied. Id.
 
 
 56
 Though Dennis explained the circumstances of her injury in the sense that she described the reasons she felt upset and humiliated, she provided no demonstrable evidence of distress such as testimony of a physical symptom or a doctor's diagnosis. Moreover, most of the distress to which she testified related to the consequences of her decision to leave Colleton and her probably exaggerated expectation of receiving promotion rather than discrimination itself. The district court was thus correct in finding that Dennis did not meet the legally necessary requirements set out in Price.
 
 III.
 
 57
 For the foregoing reasons, the district court's denial of Colleton's renewed motion for judgment as a matter of law and motion for a new trial, as well as its grant of Colleton's motion to amend or alter the Judgment as to compensatory damages for emotional distress are affirmed. The district court's grant of Dennis' motion for back pay and her counsel's motion for attorney's fees are also affirmed.
 
 
 58
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 When asked if there were "any other qualities that you thought that he had that were superior to Ms. Dennis?" Hiott answered "no." (Tr. of Trial Vol. I. at 253)
 
 
 [2]
 Contra the dissent, we do not say that Hiott's emphasis on management experience to the exclusion of other job criteria listed in the posted job description was alone probative of pretext. It is the fact that Colleton's proferred explanation for promoting Bridge over Dennis exhibited inconsistencies is probative. We agree that the business world is a "dynamic" one in which the relative importance of various job qualifications may change over time. However, we also recognize the reality that an employer asked to justify its actions after the fact has an incentive to claim that the "real" criteria were those on which the chosen employee happens to perform best relative to the plaintiff. When an employer picks one of a list of posted job qualifications and claims that it was actually decisive without regard to the others, the jury is certainly permitted to conclude, in light of the totality of the evidence, that this may have been done as a post hoc justification of a decision made on other grounds
 In this case there was sufficient evidence for the jury to reach this conclusion. In addition to the inconsistent justifications noted above, the jury was entitled to find Hiott's proffered explanation that he deviated from the formal job requirements due to a special concern for the need for a strong manager inconsistent with evidence produced by Dennis that Hiott exhibited little concern for or knowledge of how the department was being managed either before or after the hiring decision. (Tr. of Trial Vol. II 477-478, 485-488).
 
 
 [3]
 The dissent asserts that Hiott's determination that Bridge possessed superior management experience as compared to Dennis is unassailable. Not so. At a minimum, the jury could reasonably have concluded that any superiority was marginal and viewed this fact as probative of the veracity of Hiott's claim that he was looking for a strong manager to stem a state of chaos in the registration department or of his explanation for his decision to interview Bridge but not Dennis
 Viewing the evidence in the light most favorable to Dennis, Hiott knew only that Bridge had managed a small Family Dollar store in Hampton, South Carolina for less than a year. This was the only management experience that Hiott recalled in his deposition or at trial. The dissent would make much of the fact that Bridge listed "transportation manager" and "marketing coordinator" in the employment section of his application to work as a PBX operator. However, the full record indicates that neither of these were management jobs and there is no indication that Hiott understood them as such. Under the line on which Bridge described his then current position at Clean Management Environment as "transportation manager" he was instructed to describe his principle responsibilities in that position. Bridge listed these as "upkeep of computer systems and truck dispatch." (J.A. at 364). No managerial duties were listed, and Dennis provided independent testimony from a former co-worker at Clean Management that Bridge had no supervisory duties in that position. Similarly, the responsibilities Bridge listed as a "marketing coordinator" at Coastal Electric Coop were "upkeep of computers and program development," which do not indicate any management role. (J.A. at 364).
 The dissent also cites the testimony of Dr. Ann Jonason, a director at Colleton, as independent evidence of Bridge's superior management skills. Dr. Jonason testified that she interviewed Bridge prior to his promotion. However, Dr. Jonason's testimony about her impression of Bridge is irrelevant because she was not the decision maker. Hiott testified that he did not recall asking Jonason to interview Bridge or consider any input from her in making his decision. (Tr. of Trial Vol. II at 457-459).
 
 
 [4]
 While claiming to adhere to the framework mandated inReeves, the dissent would require more of plaintiffs by requiring them to meet the test specified in the pre-Reeves case of Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir.1996). In Evans, this circuit held that plaintiffs such as Dennis are required to establish that they are better qualified for the position sought than those to whom the position is actually given. Reeves plainly instructs us to apply a contrary approach by affirming that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. 530 U.S. at 147, 120 S.Ct. 2097. While the dissent argues that Evans is consistent with Reeves, we frankly do not see how its argument that "the relative qualifications of competing employees are part of the analytical framework relevant to proving pretext" advances its argument. If, by this, the dissent means that an employee is required as a matter of logic to show that she was the superior candidate in order to refute an employer's claim that it hired somebody else for their superior qualifications, we respectfully disagree. One way to prove the plaintiff's case would certainly be to show that her qualifications were so plainly superior that the employer could not have preferred another candidate. But an equally valid way to prove pretext is to provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather a false description of its reasoning — albeit one based on a real difference in qualifications — manufactured after the fact.
 Indeed, this is often the only way a plaintiff can reasonably be expected to show pretext. Employers are free within certain bounds to choose the criteria by which they may legitimately assess employees. In comparing any two employees, it is often the case that each is superior on at least a few of the possible criteria that could be used in assessing their qualifications. Given these facts, it is not farfetched to suppose that discriminatory employers might be likely to choose to emphasize at trial those characteristics on which their chosen candidates were superior in order to construct pretextual explanations that are as plausible as possible. If plaintiffs were required to show they were superior on the criteria chosen at trial by their employers, rather than being free to show that the criteria were not the ones actually used, the McDonnell Douglas frame-work would become a shield for employers rather than a tool to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. See Burdine, 450 U.S. at 255, 101 S.Ct. 1089.
 
 
 [5]
 We note that a decision not to promote Dennis because of an allegation that she was involved in an extramarital affair might, but need not, itself reflect gender bias depending on how a man would be treated in the same circumstances. However, this was not an issue developed in the record and we do not consider it here
 
 
 
 59
 KING, Circuit Judge, concurring in part and dissenting in part:
 
 
 60
 I agree entirely with my distinguished colleague that we should affirm the denial of Colleton's motion for judgment as a matter of law, as well as its motion for a new trial. I also agree that the district court's award of front and back pay to Dennis was appropriate, as was its grant of attorney's fees. I part company with Judge Hall's excellent opinion solely with respect to Colleton's Rule 59(e) motion attacking the award of $25,000 for compensatory damages, and the district court's reduction of this sum to zero.
 
 I.
 
 61
 A jury award of compensatory damages is only to be set aside when it is "against the clear weight of the evidence, or based upon evidence which is false, or will result in a miscarriage of justice." Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir.1996) (quoting Johnson v. Hugo's Skateway, 974 F.2d 1408, 1414 (4th Cir.1992) (en banc)). After examining the evidence supporting the jury's compensatory damages award to Dennis for emotional distress, the district court determined the evidence to be insufficient, and it reduced the jury's award to nothing. We review such a decision, made under the provisions of Rule 59(e), for abuse of discretion. EEOC v. Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir.1997).
 
 
 62
 In assessing whether sufficient evidence supports the compensatory damages award, the court was constrained from substituting its judgment for that of the jury or from making credibility determinations. Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir.1996). It was also bound to view the evidence in the light most favorable to Dennis and to draw all reasonable inferences therefrom in her favor. Id. When considered in this light, there is ample evidence to support the jury's award. As such, I am left with the "definite and firm conviction" that the court, by substituting its judgment for that of the jury, committed a "clear error of judgment," and thereby abused its discretion. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir.1999) (observing that abuse of discretion occurs when reviewing court possesses "definite and firm conviction that ... a clear error of judgment" has occurred).
 
 II.
 
 63
 This is not a case in which the only evidence of demonstrable emotional distress came from Dennis's own testimony. Corroborating evidence exists, namely the testimony of Terry Lance Dennis, Dennis's ex-husband. At trial, Mr. Dennis testified that his ex-wife "was devastated" and that she "was very upset" at not receiving the position of Registration Supervisor at Colleton Medical Center. He further related that Dennis "couldn't believe" that Bridge had been awarded the position, especially because Colleton expected her to train Bridge for the position that she had sought.
 
 
 64
 Terry Dennis's testimony not only establishes that Dennis experienced emotional distress because of Colleton's discriminatory conduct, but it also is entirely consistent with Dennis's own account of the emotional toll that Colleton's unlawful gender discrimination had upon her. In that connection, Dennis testified that she "was very irritated" and "was angry" at being denied the promotion to Registration Supervisor. She also explained to the jury that she "got frustrated" at having to train Bridge, that she just "couldn't do it anymore," and that because of these feelings she resigned her position at Colleton, despite her economic need for full-time employment.
 
 
 65
 In Price, we recognized that "a plaintiff's testimony, standing alone, may support a claim of emotional distress." 93 F.3d at 1251. And, while we must "scrupulously analyze" such awards, we only require a reasonable explanation of the emotional distress. Id. Accordingly, when I view the evidence in the light most favorable to Dennis and draw all reasonable inferences in her favor therefrom, I see sufficient evidence substantiating the jury's determination that Dennis suffered emotional injuries due to Colleton's illegal gender discrimination. As such, the only remaining questions are whether the jury's award is excessive and whether it is "proportional to the actual injury incurred."* See Knussman, 272 F.3d at 640.
 
 
 66
 In this situation, the jury award to Dennis constituted an entirely modest sum, given this evidence and the serious emotional distress she suffered because of Colleton's illegal conduct. As such, I find nothing in the record to suggest that this aspect of the verdict is excessive or otherwise not proportional to the injury incurred. I would therefore reverse the district court on this point.
 
 
 
 Notes:
 
 
 *
 In addressing the question of excessiveness, we are obliged to look to a number of factors, including: any medical attention sought; the degree of mental distress experienced; the factual circumstances that emotional distress developed under; any corroborating testimony; any mitigating circumstances; any physical injuries caused by the emotional distress; and any economic lossKnussman v. State of Maryland, 272 F.3d 625, 640 (4th Cir.2001).
 
 
 
 67
 WILLIAMS, Circuit Judge, dissenting in part and concurring in part in the judgment:
 
 
 68
 For the reasons set forth below, I respectfully disagree with the conclusion that there is sufficient evidence demonstrating that Columbia Colleton Medical Center's legitimate, non-discriminatory justification for promoting Johnny Bridge instead of Joyce Dennis was pretext for gender-based discrimination. Because Dennis failed to produce sufficient evidence of pretext to sustain the jury's verdict and, therefore, failed to meet her burden of establishing the ultimate issue of discrimination vel non, Colleton was entitled to judgment as a matter of law. Moreover, insofar as Dennis failed to establish the prerequisites for Title VII liability, she did not introduce sufficient evidence to support the jury's award of emotional distress damages. Accordingly, I dissent from Parts A. through D. of Section II. of the majority opinion and concur in the judgment of Part E. of Section II.
 
 I.
 
 69
 We review de novo the district court's denial of judgment as a matter of law, viewing the evidence in the light most favorable to Dennis, as the non-moving party. Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.Proc. 50(a); see also Weisgram v. Marley Co., 528 U.S. 440, 447, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000). "While we are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, we are not a rubber stamp convened merely to endorse the conclusions of the jury, but rather have a duty to reverse the jury verdict[ ] if the evidence cannot support it." Price v. City of Charlotte, North Carolina, 93 F.3d 1241, 1250 (4th Cir.1996) (internal citations omitted).
 
 
 70
 "To defeat an employer's motion for [judgment as a matter of law] as to liability in a discrimination suit, the plaintiff must present substantial evidence to support as a reasonable probability, rather than as a mere possibility, that her employer discriminated against her because of a protected characteristic." DeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir.1998). "This standard simply bespeaks the special danger that in a matter so generally incapable of certain proof [a] jury decision will be on the basis of sheer speculation, ultimately tipped, in view of the impossibility of choosing rationally between mere possibilities, by impermissible but understandable resort to such factors as sympathy and the like." Id. (internal quotation marks omitted) (alteration in original).
 
 A.
 
 71
 As the majority notes, Colleton's primary argument on appeal is that Dennis failed to introduce sufficient evidence of pretext to sustain the jury's finding on the ultimate issue of discrimination vel non. Colleton presented evidence that Bridge was promoted instead of Dennis because Colleton perceived Bridge as having been more qualified than Dennis for the registration supervisor position. Where an employer has asserted that relative employee qualifications constituted the non-discriminatory justification for the promotion decision, "the plaintiff must establish that she was the better qualified candidate for the position sought" to meet her burden of proving that the company's explanation is pretextual and that she was the victim of intentional discrimination. Evans v. Techs. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir.1996). In analyzing whether the plaintiff has met her burden of proving that she was a better qualified candidate, "[i]t is the perception of the decision maker which is relevant." Id. at 960-61 (internal quotation marks omitted).
 
 
 72
 Dennis concedes that at the time of the promotion decision, she did not meet all of the posted qualifications for the position. She had worked in a hospital business office setting for fourteen months,[1] as opposed to three years, and had only worked on a full-time basis for six months. Likewise, Bridge did not meet all of the posted job qualifications, in that he had worked in a hospital setting for approximately ten weeks as a part-time switchboard operator at the time he was offered the registration supervisor position. Both Dennis and Bridge were high school graduates, but neither had taken business courses, courses in a medically related field, or courses in medical terminology or management.
 
 
 73
 It being established that neither candidate fully met the posted job qualifications, the evidence regarding the relative qualifications of Bridge and Dennis consisted primarily of the testimony of Jimmy Hiott, who was in charge of the promotion decision. Hiott testified that he promoted Bridge instead of Dennis because, in his judgment, Bridge had more extensive and valuable managerial experience than Dennis, which Hiott testified he believed to be a particularly important qualification for the registration supervisor position because of ongoing management problems in the Registration Department. Dr. Ann Jonason, who also interviewed Bridge and recommended him for the supervisor position, testified that she believed Bridge had "a lot of strengths in management," (Tr. of Trial Vol. II at 437), and that the Registration Department "desperately needed a manager ... a leader ... someone who could help [the department] become a cohesive whole...." (J.A. at 227; Tr. of Trial Vol. II at 438.)
 
 
 74
 Dennis did not introduce any evidence discrediting Hiott's perception that Bridge had more management experience than Dennis. Bridge's employment application, which the undisputed evidence established that Hiott consulted prior to interviewing Bridge, indicated that the vast majority of Bridge's employment history involved managerial positions. Bridge's employment application states that he served as a transportation manager at Clean Management Environmental from January 1994 until July 1997, when he was awarded the registration supervisor position, served as the store manager for the Family Dollar from February 1993 until January 1994, and served as a marketing coordinator at Coastal Electric Coop from January 1988 until February 1993. The only nonmanagement-related job in Bridge's employment history was his earliest job, which was selling insurance.[2]
 
 
 75
 Dennis's employment application, on the other hand, established that she had been out of high school for two years, had been employed in various cashier and secretarial positions, and had one year of experience as an assistant manager of Showtime Video & Music. Dennis also had acted as de facto manager of the Registration Department during the eight weeks in which the Department was without a manager. Based upon this evidence, and even viewing the record in the light most favorable to Dennis, Hiott's determination that Bridge possessed superior managerial experience as compared to Dennis is unassailable.
 
 
 76
 Indeed, at the summary judgment stage, the district court granted summary judgment in favor of Colleton because the uncontradicted evidence demonstrated that Dennis was not more qualified for the promotion than Bridge, (J.A. at 44-53), but the district court later reversed this ruling after the Supreme Court's subsequently-issued decision in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In reversing its previous ruling, the district court indicated that it believed that Reeves overruled Evans, wherein we held that when an employer has asserted that relative employee qualifications constituted the non-discriminatory justification for the promotion decision, "the plaintiff must establish that she was the better qualified candidate for the position sought" to meet her burden of proving that the company's explanation was pretextual. Evans, 80 F.3d at 960, (Tr. of Trial Vol. III at 677.) As we made clear in Evans itself, however, the relative qualifications of competing employees are part of the analytical framework relevant to proving pretext, and Reeves did not disrupt that framework. Id. (describing the employee's burden of production at the pretext stage as requiring the employee to prove "that she was the better qualified candidate for the position sought"); Reeves, 530 U.S. at 148, 120 S.Ct. 2097 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." (emphasis added)); Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000) ("Put another way, in Reeves the Supreme Court held that when a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, this does not automatically create a jury question, but it may do so." (first emphasis added)). Accordingly, Reeves did not overrule Evans, and the district court committed an error of law insofar as it reversed its grant of summary judgment on this basis.[3] Because the district court's initial grant of summary judgment in favor of Colleton was proper, and neither Reeves nor the evidence introduced at trial regarding the relative qualifications of Bridge and Dennis undermined this initial ruling, I believe that judgment as a matter of law in favor of Colleton is required.
 
 B.
 
 77
 The majority asserts that "the jury's finding of pretext does not stand or fall" on the relative qualifications of Bridge and Dennis but instead rests upon other types of circumstantial evidence. Ante at 648. In detailing this alleged circumstantial evidence, the majority categorizes Colleton's explanation of the importance placed upon prior managerial experience as a "post-hoc rationalization[ ]" that is probative of pretext because managerial experience was listed in the posted job description as being a "preferred" qualification, as opposed to a "required" qualification.[4] Ante at 645. Assuming that there is any significant difference between Colleton's proffered emphasis on management experience and the emphasis placed on management experience in the posted job description,[5] I disagree that the difference is of any probative value. Faced with no candidate who fits the job description perfectly, an employer must choose from among the applicants the most acceptable candidate. By characterizing a shift in emphasis regarding the posted job qualifications as a "post-hoc rationalization[ ]," the majority fails to perceive the limited practical utility of a posted job description, as well as the realities of promotion decisions, which often, as in this case, are "inherent[ly] dynamic" decisions. Lee v. GTE Florida, Inc., 226 F.3d 1249, 1255 n. 2 (11th Cir.2000), cert. denied, 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) (noting that a shift in emphasis among or away from qualifications listed in a posted job description is not probative of pretext because the promotion process is dynamic); Nichols v. Lewis Grocer, 138 F.3d 563, 568 (5th Cir. 1998) (finding unpersuasive plaintiff's argument that the fact that the employer had changed the importance of the criteria used in the selection process established pretext, because "[t]he promotion decision is a dynamic one, and the relative importance placed on various selection criteria cannot be expected to remain fixed and unyielding"). Jonason emphasized that based upon her experience at the hospital and ongoing problems in the Registration Department, management experience had become the "overriding concern" in choosing the registration supervisor. (Tr. of Trial Vol. II at 438.) Hiott similarly testified at both his deposition and at trial that management experience became a top priority in the promotion decision because of an escalating crisis in the management of the Registration Department, exacerbated by the sudden departure of the previous registration supervisor. Dennis did not present any evidence demonstrating that a heightened emphasis on management experience was unjustified or otherwise inappropriate in light of the hospital's situation at the time of the promotion decision. In light of the undisputed realities of Colleton's changing needs and the dynamic nature of the promotion process, I fear that the majority's approach unduly constrains employers such as Colleton to abide woodenly by posted job criteria or face Title VII liability. Thus, I respectfully disagree that Colleton's emphasis on management experience in making its promotion decision constituted a "post-hoc rationalization[ ]" or was in any manner probative of pre-text.
 
 
 78
 The majority next contends that alleged inconsistencies between Hiott's trial and deposition testimony regarding his reason for promoting Bridge instead of Dennis are probative of pretext. I do not find that the record reveals any of the alleged inconsistencies. When asked at trial why he did not feel Dennis was qualified for the promotion, Hiott stated that he had reviewed her application and determined that she lacked "the management skills necessary for the position," whereas Bridge's application indicated that he possessed the requisite management experience. (J.A. at 244-45.) The majority asserts that Hiott testified at trial that computer experience was one of the decisive factors weighing in favor of Bridge in making the promotion decision, but, as noted in note 3, supra, Hiott's testimony does not appear to support this characterization. At best, Hiott's testimony could be read as indicating that he believed that Bridge's computer experience was a factor weighing in favor of Bridge in the promotion decision, but not that he believed Bridge to be more qualified than Dennis with respect to computer experience. Such testimony is entirely consistent with his deposition testimony, where he testified that Bridge possessed the requisite degree of computer knowledge for purposes of the promotion. (Deposition of James O. Hiott at 97, lines 16-23; J.A. at 183). Contrary to the majority's assertion, Hiott never testified that managerial experience was the "only" reason for the promotion decision. Instead, Hiott testified that "management experience was the biggest quality that I was looking for in the — in the individual and what the hospital needed...." (Deposition of James O. Hiott at 85, lines 19-25; J.A. at 177 (emphasis added).) At trial, Hiott took precisely the same position, testifying again that management experience was the most important factor weighing in favor of Bridge in the promotion decision. Accordingly, the record does not reveal any inconsistency between Hiott's trial and deposition testimony that is probative of pretext.[6]
 
 
 79
 The majority next identifies the "unequal way" in which Hiott conducted the promotion process as evidence of pretext, deeming it "peculiarly informal," ante at 643, and emphasizing the fact that Bridge was given an interview, whereas Dennis was not, ante at 647. The undisputed evidence demonstrated that Dennis originally was interviewed by Jennifer Wray for the registration supervisor position, that Hiott reviewed Dennis's initial application prior to making the promotion decision, and that Hiott felt Dennis's application did not warrant granting her an interview because it demonstrated that she lacked the requisite degree of management experience.[7] Dennis and the majority have taken pains to criticize Hiott's failure to follow-up on Dennis's in-house work experience, training, and evaluations, but an employer is uniquely situated to evaluate the benefit of interviewing an applicant or delving further into the applicant's abilities, and Title VII does not require that all applicants be treated "equally"; it requires only that the applicant not be discriminated against on the basis of a protected characteristic. Indeed, I cannot see anything in Title VII that requires an employer to grant an interview to every applicant instead of selectively interviewing candidates based upon a paper record. I fear that the majority's holding regarding the probative value of the "unequal" nature of the promotion process thrusts the court and the jury into the role of super-personnel officer, a role that we have emphasized is outside the province of the appropriate Title VII inquiry. See DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including work-place reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"); Brill v. Lante Corp., 119 F.3d 1266, 1272 (7th Cir.1997) ("Courts refuse to sit in judgment as super-personnel departments overseeing corporate decisions...."). Reeves and its progeny hold that duplicity, not informality, supports an inference of discrimination. Accordingly, I respectfully disagree that the "unequal" or "informal" nature of the selection process is probative of pretext.
 
 
 80
 Finally, the majority notes that another female applicant, Tonya Williams, was not interviewed for the promotion, which it suggests is probative of pretext. Hiott testified that he was unaware that Williams had applied for the promotion until after the promotion had been given to Bridge. Williams's application for the promotion was dated June 19, 1997, and she testified that she turned her application in to the Human Resources Department and subsequently interviewed for the position with Wray. Bridge received the promotion on or about July 9, 1997. Patty Hendricks, the Human Resource Director, testified that she received Williams's application on July 14, 1997, and that prior to that date, she had not been made aware that Williams had applied for the promotion. She testified that she therefore had not given Williams's application to Hiott prior to the promotion being filled because she was unaware that Williams was interested in the position until after the position had been filled. Dennis speculates that because Wray interviewed Williams for the position before Bridge was offered the promotion and because Williams testified that she originally turned her application in to Human Resources, Hiott's and Hendrick's testimony, in which each stated that they were not aware that Williams had applied for the position prior to Bridge receiving the promotion, could have been found by the jury to have been incredible. There is no evidence, however, demonstrating that Wray, or anyone else, informed Hiott of Williams's interest in the position prior to the position being filled, nor is there any evidence that Wray interviewed Williams after having received the application from Human Resources, as opposed to learning of Williams's interest in the position in some other way. Dennis, therefore, failed to put forth any evidence demonstrating that Hiott actually received Williams's application or possessed any knowledge that Williams had applied for the promotion before filling the position, and the speculation relied upon by Dennis and the majority with respect to Williams's application is insufficient to overcome Colleton's motion for judgment as a matter of law.[8] DeJarnette, 133 F.3d at 298 (admonishing that a court reviewing a district court's denial of judgment as a matter of law must be careful not to affirm on the basis of "sheer speculation").
 
 
 81
 Even assuming the evidence regarding Williams could be viewed as probative of pretext, Dennis presented, at best, extremely weak evidence that Colleton intentionally discriminated against her because of her gender, and statistical evidence provides independent support for Colleton's proposition that it was not engaging in gender discrimination by failing to promote her. See, e.g., Reeves, 530 U.S. at 148, 120 S.Ct. 2097 ("[A]n employer would be entitled to judgment as a matter of law... if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir.2000) (holding that, while plaintiff had presented sufficient evidence of prima facie case and pretext, evidence of discrimination was too weak to be submitted to the jury). The undisputed evidence established that approximately 65% of Colleton's supervisory positions are held by females, and one of the top management positions in the hospital, that of Chief Executive Officer, has been held by a woman since 1995. Hiott hired a female, Peggy Cribb, for the registration supervisor position prior to hiring Bridge. Following Bridge's second promotion to the Information Services Department at Colleton in 1998, the registration supervisor position was filled by a female, Marsha Grimsley. A female, Jennifer Pinckney, currently holds the position. Further, Dennis had been promoted and transferred according to her wishes repeatedly during her employment with Colleton.
 
 II.
 
 82
 After reviewing all of the evidence in the light most favorable to Dennis, I am convinced that there was insufficient evidence to support the jury's finding that Colleton's legitimate, non-discriminatory reason for promoting Bridge instead of Dennis was false. Without sufficient evidence of pretext, no rational juror could have determined that Dennis met her burden of establishing the ultimate issue of discrimination vel non.[9] Title VII is a tool to vindicate the important congressional policy against discriminatory employment practices. It is not to be invoked lightly whenever a promotion decision is made by means of a process of less than total precision and determinacy, yet it is precisely this consequence that I fear will follow from the majority's approach. Moreover, because I do not believe Dennis established the prerequisites of Title VII liability, I similarly do not believe she is entitled to recover emotional distress damages. Thus, I concur in the judgment of Section II. Part E.[10]
 
 
 
 Notes:
 
 
 [1]
 Dennis began working at Colleton on May 1, 1996 as a part-time emergency room registration clerk. Dennis's resignation letter, which was dated July 9, 1997, stated:
 To Whom It May Concern:
 I would like to notify you of my resignation of my full-time postion [sic] here at Colleton Reigonal [sic] Hospital. Although I am requesting to stay as PRN help. I feel as though this was warrented [sic] due to the internal conflicts that closely effects [sic] my job. I have enjoyed working here full-time, and have made many new friends. I am gratefull [sic] for the experience I have gained, and hope in the future if needed I will have employment opportunities [sic] here at CCMC.
 (J.A. at 353.)
 
 
 [2]
 In suggesting that Bridge's superior managerial experience was "over-played" by Hiott, the majority states that Bridge's "only verified management experience consisted of managing a small Family Dollar store more than four years earlier," but it makes no reference to Bridge's employment applicationAnte at 647. Instead, the majority would have us review evidence regarding the nature of Bridge's past employment that was not known to Hiott at the time he made the promotion decision and ignore Bridge's employment application itself, which was indisputably reviewed by Hiott prior to the promotion decision, and further ignore the corroborating testimony of the other person who participated in the decision-making process, Dr. Jonason.
 
 
 [3]
 In suggesting thatReeves overruled Evans, ante at 648-49 n. 4, the majority misapprehends the nature of the Reeves holding and fails to reconcile its position with that of the Eleventh Circuit, which has continued, post-Reeves, to hold that the employee has an obligation, at the pretext stage, to make an evidentiary showing that her qualifications are superior to those of the person selected for the promotion. Lee v. GTE Fla., Inc., 226 F.3d 1249, 1254 (11th Cir.2000). Similarly, the Fifth Circuit has described this obligation as part of the plaintiff's burden of persuasion in establishing pretext. Deines v. Texas Dept. of Protective & Reg. Servs., 164 F.3d 277, 280-81 (5th Cir.1999).
 
 
 [4]
 The majority asserts that because computer expertise deviates from the posted job qualifications, it also has the "flavor of [a] post-hoc rationalization[ ]."Ante at 647. I do not find support in the record for the majority's characterization of the evidence presented to the jury regarding the role of computer expertise in the promotion decision. Hiott testified that he was impressed with Bridge's computer expertise, which Hiott believed would be helpful in light of the hospital's upcoming computer systems upgrade. Additionally, Jonason testified that she considered computer qualifications an important criteria for the promotion decision. She testified that during the interview, she "asked [Bridge] rather intensely about his information system background, his computer expertise, because at that particular time we were getting ready to initiate a new computer system." (J.A. at 224.) She further testified that she was "very impressed with ... his knowledge of computer systems" and his computer background. (J.A. at 225.) Neither Hiott nor Jonason, however, testified in any manner regarding Bridge's computer experience vis-a-vis Dennis's; instead, the undisputed evidence demonstrated that Dennis was eliminated from the selection process solely because of her lack of management experience. (Tr. of Trial Vol. II at 452-53) ("I reviewed [Dennis's] application ... and at that point made a determination ... that [Dennis] did not have the management skills necessary for that position.... [S]o I did not feel comfortable at all with moving forward with her as an applicant."). Accordingly, although the evidence established that computer expertise was a positive qualification possessed by Bridge, no evidence suggests that Colleton determined that Bridge's computer experience "set Bridge apart" from Dennis, ante at 646. Because computer expertise was not offered as a reason for promoting Bridge instead of Dennis, the majority's reliance upon Bridge's computer expertise in its pretext analysis is improper. Additionally, as with management experience, Colleton's alleged emphasis on computer expertise in selecting Bridge for the promotion is not a significant departure from its posted qualifications, in which it stated that basic knowledge of computers was required.
 
 
 [5]
 Logically, if a qualification is "preferred," it can be decisive when choosing between two candidates. Consequently, I do not perceive any inconsistency between the emphasis placed upon management experience in the job description and Colleton's proffered emphasis on management experience in making its promotion decision. Indeed, if a qualification in the posted job description could never support a decision between two candidates, one wonders why it is included in the posted job description at all. By suggesting that a jury is entitled to find the ultimate issue of discrimination any time an employer "picks one of a list of posted job qualifications and claims that it was actually decisive without regard to the others,"ante at 657 n. 2, and by further suggesting that the employee no longer bears the burden of proving that she possessed superior qualifications as compared to the person selected for the promotion, ante at 658 n. 4, the majority thrusts this court and juries into the role of super-personnel officers and permits juries to simply second-guess an employer's hiring and promotion decisions. This approach relieves the plaintiff of her burden of proving the ultimate issue of discrimination vel non, a result that is not mandated by Reeves and constitutes a significant departure from this circuit's Title VII jurisprudence.
 
 
 [6]
 To the extent the majority suggests that Hiott's failure to recall certain aspects of the interviewing process during the deposition, compared with his greater recall at trial, is probative of pretext, this does not meet the requisite level of proof necessary to defeat Colleton's motion for judgment as a matter of lawDeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir.1998) (requiring a "reasonable probability, rather than ... a mere possibility," that the employer discriminated against an employee because of a protected characteristic). Even assuming that Hiott exhibited a greater level of clarity with respect to the content of Bridge's interview at trial than he exhibited at his deposition, any inconsistency is irrelevant because it is uncontroverted that Dennis was eliminated from the selection process prior to Bridge's interview, in that Hiott determined from reviewing Dennis's initial application that she lacked the management experience necessary for the promotion. See note 3, supra; (Tr. of Trial Vol. II at 452-53.)
 
 
 [7]
 At trial, Dennis argued that Hiott eliminated her from the selection process prematurely, in that Hiott reviewed the application that she submitted when she first began working at Colleton fourteen months earlier but did not review her most recent application, which reflected the experience she gained while employed at Colleton. If Hiott had reviewed her most recent application, he would have discovered that Dennis had worked as a de facto manager in the Registration Department for several weeks. Even considering her work as a de facto manager, however, Dennis did not establish that she had more managerial experience than Bridge. Thus, Hiott's failure to consider her most recent application, while possibly a poor management decision, is not probative of pretext or gender discrimination
 
 
 [8]
 The majority also speculates that the true reason for Colleton's promotion decision was because of Dennis's reputed affair with one of the doctors or because of Hiott's friendship with Bridge's wifeAnte at 650. Colleton has never asserted either of these theories as a justification for its promotion decision, and, as the majority concedes, neither justification, had it been asserted, would have been probative of gender discrimination.
 
 
 [9]
 Because I believe Colleton was entitled to judgment as a matter of law, I do not address its alternative argument that it was entitled to a new trial. Moreover, insofar as I would not have found Dennis to have been the prevailing party, I do not join in the majority's affirmance of the attorney's fee award or back pay award in her favor
 
 
 [10]
 I note that, even if I were to conclude that Dennis met the prerequisites for Title VII liability, I would hold that the district court did not abuse its discretion in setting aside the jury verdict in favor of Dennis for emotional distress damages because Dennis failed to put forth sufficient evidence of emotional distress to support the jury's verdict pursuant to the standard set forth inPrice v. City of Charlotte, 93 F.3d 1241 (4th Cir.1996).