PATHWAYS PSYCHOSOCIAL, et al.

v.

TOWN OF LEONARDTOWN, MD, et al.

No. Civ.A. DKC 99–1362.

United States District Court, D. Maryland.

Aug. 9, 2002.

702

Kathleen A Ellis, Piper Rudnick LLP, Baltimore, MD, Beth Pepper, Baltimore, MD, Susan H Pope, Piper Rudnick LLP, Washington, DC, for plaintiffs.

Daniel Karp, Victoria M Shearer, Allen Karpinski Bryant and Karp, PA, for defendants.

Tawana E. Davis, Office of the United States Attorney, Baltimore, MD, Lynne A Battaglia, Annapolis, MD, for U.S., amicus.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this civil rights case are 1) Defendants' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59, and 2) Plaintiffs' motion for declaratory and injunctive relief. The issues have been fully briefed and a hearing was held. For reasons that follow, the court shall deny Defendants' motion and grant in part Plaintiffs' motion.

### I. Background

On December 20, 2001, the court entered a judgment upon a jury verdict in

favor of Plaintiffs Pathways Psychosocial Support Center, Inc. ("Pathways") and Clarissa Edwards against Defendants the Town of Leonardtown and Daniel Muchow for violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12–132, *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The jury found that Pathways' use fit within the permitted uses of the Commercial–General ("C–G") zone in Leonardtown and that Leonardtown intentionally discriminated against Plaintiffs in violation of the ADA and § 1983 by 1) the Town Council's rescission of Pathways' loan endorsement, 2) the decision of the Town Administrator to refer the question of Pathways' occupancy permit to Leonardtown's Planning and Zoning Commission, and 3) the Commission's refusal to issue an occupancy permit. In addition, the jury found that Defendant Muchow discriminated against Plaintiffs in violation of § 1983 because of his role in the rescission of Pathways' endorsement. The jury granted $540,916 in compensatory economic damages to Pathways against Leonardtown, $20,000 in compensatory non-economic damages to Edwards against Leonardtown, nominal compensatory damages to both Plaintiffs against Muchow, $5000 in punitive damages to Pathways against Muchow, and $15,000 in punitive damages to Edwards against Muchow.

At the close of Plaintiffs' evidence at trial, Defendants moved for judgment as a matter of law on several grounds and the court reserved its decision. At the close of all evidence, Defendants again moved for judgment as a matter of law on the grounds previously asserted and on addi-tional grounds relating to the jury instructions and verdict sheet.[1] Within ten days of the court's order entering judgment on the jury verdict, Defendants filed a motion for judgment as a matter of law pursuant to Rule 50 or, in the alternative, for a new trial pursuant to Rule 59. In addition, Plaintiffs filed a motion for declaratory and permanent injunctive relief. Based on the jury verdict, Plaintiffs request that the court 1) declare that Pathways is a permitted use in Leonardtown's C–G zone, and 2) enjoin Leonardtown from denying Pathways an occupancy permit for a building located in the C–G zone or from taking any other action to interfere with Pathways' relocation to downtown Leonardtown for two years.

## II. Rule 50 and Rule 59 Motions

### A. Standards of Review

#### 1. Rule 50

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), *quoting* Fed.R.Civ.P. 50(a). "In ruling on a motion for judgment as a matter of law, the trial court should consider the record as a whole viewing the evidence presented in the light most favorable to the party against whom the motion is made." *Bostron v. Apfel*, 104 F.Supp.2d 548, 551 (D.Md.2000), *citing Marder v. G.D. Searle & Co.*, 630 F.Supp. 1087, 1088 (D.Md.1986), *aff'd without op. sub nom.*, *Wheelahan v. G.D. Searle & Co.*, 814 F.2d 655, 1987 WL

---

1. Several of the grounds asserted by Defendants in moving for judgment as a matter of law were previously raised and addressed by the court in its March 29, 2001, memorandum opinion and order granting in part and denying in part Defendants' motion for summary judgment. *See Pathways Psychosocial v. Town of Leonardtown*, 133 F.Supp.2d 772 (D.Md.2001).

267679 (4th Cir.1987). The court must draw all reasonable inferences in the non-movant's favor without weighing the evidence or assessing the witness' credibility. *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir.2001), *citing Sales v. Grant,* 158 F.3d 768, 775 (4th Cir.1998). "The question is whether a jury, viewing the evidence in the light most favorable to [Plaintiffs], could have properly reached the conclusion reached by this jury." *Benesh v. Amphenol Corp. (In re Wildwood Litigation),* 52 F.3d 499, 502 (4th Cir.1995). The court must grant the motion if a reasonable jury could only rule in favor of the party making the motion; if reasonable minds could differ, the court must deny it. *Baynard,* 268 F.3d at 235, *citing Sales,* 158 F.3d at 775; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that judgment as a matter of law is proper if "there can be but one reasonable conclusion as to the verdict").

*2. Rule 59*

■ A motion for a new trial under Rule 59 may be joined with a renewed motion for judgment as a matter of law under Rule 50(b). In a motion for a new trial under Rule 59, a district court must:

> set aside the verdict and grant a new trial if ... (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

*Knussman v. Maryland,* 272 F.3d 625, 639 (4th Cir.2001), *quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 594 (4th Cir.1996). "Unlike the procedure under Rule 50(b), on a motion for new trial under Rule 59(e) a district court is permitted to weigh the evidence." *Dennis v. Columbia Colleton Medical Center, Inc.,* 290 F.3d 639, 650

(4th Cir.2002), *citing Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 186 (4th Cir.1994). "[T]he district court has a duty to order a new trial to prevent an injustice." *Johnson & Towers Baltimore, Inc. v. Vessel Hunter,* 824 F.Supp. 562, 566 (D.Md.1992), *citing* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2805, at 38 (1973). However, " '[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.' " *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.,* 994 F.Supp. 350, 358 (W.D.N.C.1997), *quoting* 11 Wright & Miller, § 2803 (1995). The decision to grant or deny a new trial rests with the discretion of the district court. *Bristol,* 41 F.3d at 186, *citing Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1433 (4th Cir.1985).

*B. Analysis*

Defendants allege multiple grounds for granting judgment in their favor or a new trial. These grounds fall into three groups: (1) alleged errors instructing the jury, (2) challenges to determinations made earlier by the court on summary judgment, and (3) a challenge to the jury's compensatory damage awards as against the weight of evidence.

*1. Allegedly improper instructions*

**a. No timely objection**

■ The court cannot consider Defendants' objections to two jury instructions because Defendants failed to object before submission to the jury. Defendants contend that it was an error to give to the jury the factual determination of whether Pathways fit into Leonardtown's C–G zone. The court owed deference, they argue, to the zoning body's factual determination and should merely have determined

as a matter of law whether the zoning board's decision was based upon substantial evidence in the record. In addition, Defendants contend that the court erred in submitting to the jury separate questions about punitive damages as to Pathways and to Plaintiff Edwards because inviting the jury to make separate punitive damages awards for each Plaintiff increased the risk that the jury would increase the amount of total punitive damages.

■ Defendants, however, never objected to either instruction prior to its submission to the jury and so waived the right to object. *AG Systems, Inc. v. United Decorative Plastics Corp.*, 55 F.3d 970, 973 (4th Cir.1995); *see also Metromedia Co. v. Fugazy*, 753 F.Supp. 93, 98 (S.D.N.Y.1990), *aff'd* 983 F.2d 350 (1992) ("The court will not grant a new trial on the basis of an erroneous jury charge when a party might have obtained the correct jury charge by specifically bringing the matter to the attention of the court at the proper time."), *citing* Fed.R.Civ.P. 51[2]; *Palmer v. Hoffman*, 318 U.S. 109, 119–120, 63 S.Ct. 477, 87 L.Ed. 645 (1943). While Defendants argue that they "in essence objected" to the instruction regarding deference to the zoning board's factual findings, they could not recall a specific objection to the instruction when called upon to do so in open court nor did they point to one in their papers. Moreover, on a Rule 59 motion, the court can set aside the verdict and grant a new trial only if the erroneous instruction is prejudicial and would result in a "miscarriage of justice." Fed.R.Civ.P. 59; *see also Vanwyk*, 994 F.Supp. at 358

(no new trial unless prejudicial error); *Johnson & Towers*, 824 F.Supp. at 566.[3] Neither of the jury instructions to which Defendants have objected are so obviously erroneous so as to result in a miscarriage of justice and Defendants failed to object at the proper time. Accordingly, neither alleged error can be a ground for granting judgment or a new trial.

**b. Section 1983 claims not preempted by ADA**

■ Defendants contend that the equal protection claims brought under § 1983 against Muchow and Leonardtown should not have been submitted to the jury as those claims were preempted by the ADA. Defendants argue that 1) because the specific and comprehensive provisions of the ADA do not permit individual liability, it is unfair to allow claims against Muchow, an individual, under § 1983 premised upon the same actions, and 2) permitting the equal protection claims against the Town to go forward was duplicative and confusing to the jury.

■ Congress may foreclose a remedy under § 1983 expressly in a statute or impliedly by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *See Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (Title IV–D did not impliedly foreclose § 1983 claims because it did not provide a private remedy); *Brown v. General Servs. Admin.*, 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII foreclosed

---

**2.** Rule 51 states, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider the verdict, stating distinctly the matter objected to and the grounds of the objection."

**3.** The Fourth Circuit has applied a plain error standard when considering on appeal objec-

tions by defendants to a jury instruction after the district court denied their new trial motion: "Failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or serious that the public reputation and integrity of the judicial proceeding is impaired." *Hafner v. Brown*, 983 F.2d 570 (4th Cir.1992).

remedy under § 1983 for federal employees in employment discrimination cases because Title VII remedies sufficient); *Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364 (4th Cir.1989), *cert. denied*, 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989) (ADEA exclusive remedy to prohibit age discrimination). Defendant relies heavily on *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011–1012 (8th Cir.1999) (en banc), *cert. granted in part*, 528 U.S. 1146, 120 S.Ct. 1003, 145 L.Ed.2d 947, *cert. dismissed*, 529 U.S. 1001, 120 S.Ct. 1265, 146 L.Ed.2d 215 (2000), in which the Court of Appeals for the Eighth Circuit held that the ADA's detailed enforcement scheme barred a plaintiff from maintaining a § 1983 action against commissioners in their individual capacities for violations of the ADA: "[a]llowing a plaintiff to bring a section 1983 claim based on violations of Title II against a defendant who could not be sued directly under Title II would enlarge the relief available for violations of Title II." However, the preemption doctrine in *Alsbrook* forecloses § 1983 claims for violations of the ADA rather than, as here, claims for the deprivation of constitutional rights.[4]

In the context of Title VII, courts draw a distinction between § 1983 claims predicated on statutory rights for which Title VII is the exclusive remedy and those predicated on constitutional rights. In *Causey v. Balog*, 929 F.Supp. 900, 913 (D.Md.1996), *aff'd*, 162 F.3d 795 (4th Cir. 1998), *citing Beardsley v. Webb*, 30 F.3d 524, 527 (4th Cir.1994), the court held:

> Although the Fourth Circuit has not yet had the occasion to do so, other circuits have taken the obvious step of applying [*Great American Federal Savings &*

Loan Assoc. v.] *Novotny* [, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)] to hold that a plaintiff cannot assert violations of Title VII through § 1983. [(citing cases)]

It is equally clear, however, that Title VII does not preclude the assertion of § 1983 claims based on other statutory and constitutional provisions. In other words, although a plaintiff cannot directly circumvent Title VII's remedial scheme by predicating a § 1983 action on the rights created by Title VII, courts consistently have held that Congress did not intend by creating Title VII to preclude preexisting avenues of redress for employment discrimination, such as § 1983 suits for Fourteenth Amendment violations.

*See also Morrow v. Farrell*, 187 F.Supp.2d 548 (D.Md.2002) (general rule that Title VII does not preempt § 1983 claims applies where the plaintiff had an opportunity, but failed, to bring a Title VII claim).

While *Causey* and *Morrow* deal with Title VII preemption, "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases." *Fox v. General Motors Corp.*, 247 F.3d 169, 176 (4th Cir.2001) (citing cases). In *Baumgardner v. County of Cook*, 108 F.Supp.2d 1041, 1043 (N.D.Ill. 2000), after an extensive review of the history and interpretation of the ADA, the court drew the same distinction between preemption of statutory and constitutional rights in the context of the ADA: "[b]ased on the express language of the [ADA] and

---

4. This distinction between preempting the use of § 1983 to bring claims for violations of statutory as opposed to constitutional rights does not exist with regard to all federal statutes. *See, e.g., Boulahanis v. Board of Regents*, 198 F.3d 633 (7th Cir.1999) (the availability of Title IX claims for sex discrimination against federally-funded institutions and Title IV for race discrimination claims precludes remedies under § 1983 against federally-funded institutions for equal protection claims alleging sex and race discrimination).

the subsequent interpretations thereof, Congress did not intend for the ADA to foreclose private claims alleging constitutional violations brought under 42 U.S.C. § 1983." Accordingly, Plaintiffs' equal protection claims brought under § 1983 are not preempted by the ADA even though based on the same facts and circumstances as the ADA claims.

### c. Failure to give mitigation instruction

■ Defendants contend that the court erred in failing to instruct the jury regarding the purported duty of Plaintiffs to mitigate damages. According to Defendants, Plaintiffs' economic damages resulting from their failure to move to the Court Square or McCrone buildings could have been mitigated by requesting a zoning text amendment, a special exception use, or by appealing the board's decision. Generally:

> Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damages which could thus have been avoided.

*Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 n. 15, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). Defendants contend that the jury should have been instructed that Plaintiff had a duty to take reasonable steps to reduce or mitigate their claimed damages and that Plaintiffs may be denied recovery for so much of the losses as are shown to have resulted from failure to mitigate.

However, Plaintiffs contend, correctly, that Defendants presented no evidence at trial either that Plaintiffs failed to mitigate damages or that alternative properties were available which Plaintiffs failed to pursue. Additionally, Plaintiffs argue that their failure to request a zoning text amendment or special exception use, or to appeal the decision, is not proper evidence of a failure to mitigate damages because such attempts would have been futile given that Plaintiffs would have been petitioning the same groups which discriminated against them in the first place. In the employment context, plaintiffs do not have to pursue employment with a firm after being rejected based on discrimination if they justifiably believe that it would be futile. *EEOC v. Service News Co.*, 898 F.2d 958, 963 (4th Cir.1990); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir.1986) (plaintiff not required to accept job offer when plaintiff would be walking back into hostile work environment). Like the plaintiff in *Service News*, 898 F.2d at 963–964, Plaintiffs' belief in the futility of their further efforts to appeal the zoning decision was "rooted in the factual context of [their] rejection." Accordingly, in light of the lack of evidence tending to demonstrate Plaintiffs' failure to mitigate and the existence of evidence which supports their contention that further appeals would be futile, it was not error for the court to deny Defendants' mitigation of damages instruction.

### d. Failure to give First Amendment instruction

Defendants argue that the court erred by failing to instruct the jury that Muchow, as a citizen, was entitled by the First Amendment to engage in political speech and to petition the government. Defendants contend that Muchow's vote as Council member, and his other activities against the endorsement, are actions protected by the First Amendment. Further, without the free speech instruction, Defendants argue that there was a danger that the jury considered as a basis for liability Muchow's protected actions of petitioning and speaking, which he did not forfeit as a public official.

As a citizen, Muchow has a right guaranteed by the First Amendment to engage in political speech and petition the government. *Miami Herald v. Tornillo*, 418 U.S. 241, 257, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *New York Times v. Sullivan*, 376 U.S. 254, 270–71, 84 S.Ct. 710, 11 L.Ed.2d 686; *Buckley v. Valeo*, 424 U.S. 1, 48–49, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). He did not forfeit these rights because of his role as a public official. *Berger v. Battaglia*, 779 F.2d 992 (4th Cir.1985). However, as an instrument for implementing the discriminatory decision, Muchow's vote on the council enjoys no protection or immunity from judicial scrutiny. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Where there is proof that a discriminatory purpose has been a motivating factor in the decision [of an administrator], this judicial deference is no longer justified"). Muchow's activities in assembling citizens and collecting petitions against the resolution he would later vote against were entered only as evidence of his intent to discriminate, not themselves as examples of unlawful activities *per se*. Derogatory remarks can be direct evidence of intent to discriminate. *Taylor v. Virginia Union University*, 193 F.3d 219, 232 (4th Cir.1999). In other words, Muchow has a right not be held liable for his speech, but is not free from having his speech be considered as evidence of his actions; here as evidence of his intent in casting the vote against the council's resolution. Accordingly, it was not error for the court to deny Defendants' proposed First Amendment instruction.

### e. Failure to give mixed-motive instruction

Defendants contend that the court erred in not giving a mixed motive instruction as to Plaintiffs' burden of proof under the ADA or under the Equal Protection Clause. Unfathomably, the mixed motive instruction sought by Defendants is actually less advantageous to them than the pretext instruction used by the court. Defendants take exception to the instruction which stated: "Plaintiff must prove that, but for the intent to discriminate, the Town would have made a different decision." Defendants argue that the instruction should have stated that, if the jury finds that the discriminatory purpose was a causal motivating factor, it merely shifts the burden to Defendants to demonstrate that they would have made the same decision even if the impermissible purpose had not been considered.

Defendants are correct that they would not be liable for damages if they could demonstrate that the Town would have made the same decision even absent the discrimination. "[W]here a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983." *Texas v. Lesage*, 528 U.S. 18, 21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999) (whether plaintiff still had claims for injunctive relief under 42 U.S.C. §§ 1981 and 2000d remained open on remand). However, Defendants fail to understand that the "but for" instruction given to the jury not only incorporates the standard articulated in *Lesage*, but leaves the *entire* burden on Plaintiffs to prove that Defendants *would not* have made the same decision even absent the impermissible discrimination. Despite this, Defendants consider their proposed instruction to be more favorable to them because, they argue, their instruction would have indicated to the jury that, even if it found that Defendants discriminated, it could refrain from awarding damages if Defendants demonstrated that they

would have taken the same action even in the absence of the motivating factor. In such a case, Plaintiffs would be limited to declaratory and injunctive relief even if they had proven that discrimination was a causal factor.

 Defendants fail to demonstrate error justifying judgment in their favor or a new trial because the instruction given by the court not only incorporates the correct legal standard, but was proper in light of the strength of evidence presented. "A plaintiff qualifies for the more advantageous standard of liability applicable in mixed-motive cases if the plaintiff presents 'direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion.'" *Taylor*, 193 F.3d at 232, *quoting Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995) (internal quotations omitted). "If the plaintiff satisfies this evidentiary threshold, the burden of persuasion shifts to the employer to prove that 'it would have reached the same determination without any discriminatory animus . . .'" *Id.* Whether this threshold has been met is a decision for the district court that, "ultimately hinges on the strength of the evidence establishing discrimination." *Fuller*, 67 F.3d at 1143. This mixed motive instruction would be advantageous to Plaintiffs because even proof by Defendants that they would have made the same decision absent discriminatory animus would not allow them to escape liability altogether. *Taylor*, 193 F.3d at 232.

 The court concluded in giving its instruction that the strength of evidence of discriminatory animus did not meet the threshold necessary for a mixed motive instruction. "Absent the threshold showing necessary to invoke the standard of liability applicable in mixed-motive cases, however, a plaintiff must prevail under the less advantageous standard of liability applicable in pretext cases." *Taylor*, 193 F.3d at 232, *citing Fuller*, 67 F.3d at 1143.

As a result, the court's instruction to the jury gave Plaintiffs a heavier burden to meet in order to establish liability; that is, Plaintiffs had to prove that, absent the discriminatory animus, Defendants would not have made the same decision. While Defendants are correct in that the jury was not informed that they could find Defendants liable yet not award damages, the instruction used was correct because Plaintiffs could only prove liability if they proved that Defendants would not have made the same decision absent discrimination. Accordingly, the instruction was not error.

### f. Failure to demonstrate causal connection between Muchow's vote and rescission or between rescission and damages

Defendants contend that the questions of whether Muchow discriminated in casting his vote to rescind and whether the Town Council discriminated in voting to rescind never should have been given to the jury because Plaintiffs could not demonstrate a causal connection between either Muchow's vote and the Town Council's or between the Council's vote and any damages to Plaintiffs.

First, Defendants contend that Muchow's vote alone was insufficient to rescind a benefit to Plaintiffs because it was only one of five votes to rescind on the Town Council. Accordingly, Defendants argue that Muchow is entitled to judgment as a matter of law on Plaintiffs' § 1983 claim premised upon the Council's rescission of Pathways' endorsement. Second, Defendants argue that Plaintiffs failed to establish a causal connection between the rescission vote and damages because 1) Pathways' damages due to the rescission were merely speculative because Pathways had no contract, agreement for financing, or permits for the Court Square Building

prior to recission, and 2) there is no evidence that Plaintiff Edwards was even aware of the rescission so she could not have suffered embarrassment or humiliation from it. Finally, Defendants argue that a new trial is appropriate as a result because the rescission issue was confusing and misleading to the jury in that there was a danger that it led them to conclude that, because the Town acted improperly in rescinding its endorsement, the Mayor and Planning and Zoning Commission must also have discriminated.

 Under Maryland law, Plaintiffs do not have to prove that Muchow's actions were the sole cause-in fact of Pathways injuries for the jury reasonably to believe they were the proximate cause. *See Atlantic Mutual Ins. Co. v. Kenney,* 323 Md. 116, 127, 591 A.2d 507 (1991) ("Negligence which constitutes a proximate cause of an injury need not necessarily be the sole cause"). Rather, "... Proximate cause may be found even where the conduct of a third party is tortious or criminal, so long as the conduct was facilitated by the first party and reasonably foreseeable, and some ultimate harm was reasonably foreseeable." *Westfarm Assoc. Ltd. v. Washington Suburban Sanitary Comm'n,* 66 F.3d 669, 688 (4th Cir.1995) (internal citations omitted). By this standard, Plaintiffs set forth sufficient evidence for the jury to determine that "but for" Muchow's conduct in placing the resolution to rescind on the Council's agenda, leading a campaign to oppose Pathways' proposed move downtown, and influencing the vote of fellow council members, the Council would not have voted to rescind the endorsement of Pathways.

 Similarly, Plaintiffs set forth sufficient uncontroverted evidence that Pathways would have purchased the Court Square Building if not for the decision to rescind. Gerald McGloin, the executive director of Pathways, testified that he had been shown the building and that he informed the seller that Pathways intended to accept the offer price provided it could obtain a revitalization loan from Maryland, for which Pathways needed the Council's endorsement. A jury reasonably could believe that, but for the rescission of the Council's endorsement, Pathways would have procured the loan and subsequently purchased the Court Square Building. Additionally, in light of the causal connection between the Council's rescission of Pathways' endorsement and Pathways' failure to move downtown, Edwards' claim to damages is not too attenuated or speculative. Plaintiffs set forth evidence that Edwards suffered humiliation and embarrassment upon learning that the town blocked Pathways' move downtown. Accordingly, Defendants fail to establish that there was no causal connection between the rescission vote and Plaintiffs' damages.

 Finally, given the court's determination that Plaintiffs set forth evidence sufficient to establish a causal connection, the jury instruction was not misleading. District courts are "necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." *Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1293 (4th Cir.1995), *citing Price v. Glosson Motor Lines, Inc.,* 509 F.2d 1033, 1036 (4th Cir.1975). "So long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous." *Hardin,* 50 F.3d at 1294, *citing Spell v. McDaniel,* 824 F.2d 1380, 1395 (4th Cir.1987), *cert. denied sub. nom., City of Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Defendants' contention that the jury might be swayed by Leonardtown's liability in one instance to think it liable in another holds no weight given that the instruction was correct. In any

case, "[e]ven when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced [Defendants'] case." *Hardin,* 50 F.3d at 1296, *citing Wellington v. Daniels,* 717 F.2d 932, 938 (4th Cir.1983). Given that the instructions are accurate, Defendants make no demonstration of prejudice resulting from the instruction and the instructions were not erroneous.

## 2. Challenges to summary judgment determinations

### a. Zoning decision not ripe for judicial determination

Defendants reiterate an argument they made at summary judgment, contending that the Planning and Zoning Commission's denial of an occupancy permit to Pathways for the C–G zone was not ripe for judicial review because Plaintiffs failed to file for a variance, appeal to the Board of Appeals, or request a zoning text amendment.

In deciding whether an issue is ripe, the court looks to "whether the issue is substantively definitive enough to be fit for judicial decision and whether hardship will result from withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681, *modified on other grounds, Califano v. Sanders,* 430 U.S. 99, 104, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208 (4th Cir.1992). As Defendants concede, Title II of the ADA does not contain an administrative exhaustion requirement. *See Bledsoe v. Palm Beach Cty. Soil & Water Conserv. Dist.,* 133 F.3d 816, 824 (11th Cir.1998). On summary judgment, the court, relying on *Bryant Woods Inn, Inc. v. Howard County, Maryland,* 124 F.3d 597, 601 (4th Cir. 1997), held that the Commission's zoning decision was sufficiently final and concrete for judicial decision after the Commission

denied Pathways' application for an occupancy permit and denied its request for a reasonable accommodation. Defendants contend that the current case is distinguishable from *Bryant Woods* because, in that case, the court determined that a Fair Housing Act ("FHA") claim was ripe for review only after a public hearing was held, a zoning text amendment was requested, the Board issued a written decision denying the petition, and a Motion for Reconsideration was filed and denied.

However, the court's decision in *Bryant Woods* was not based, as Defendants would have it, on the various post-deprivation procedures pursued by appellees in that case. In fact, in that case, the court expressly rejected the appellant's argument that the claim was not ripe because appellee had not completed the administrative process by appealing to the Howard County Board of Appeals. Rather, that court's decision was based on the fact that the FHA violation occurred when a reasonable accommodation was denied, "irrespective of the remedies granted in subsequent proceedings." *Bryant Woods,* 124 F.3d at 602. Here, Plaintiffs did not file suit until after the Commission made its decision denying the occupancy permit (and after they sent letters to various officials requesting reconsideration of the decision based on a need for reasonable accommodation). Therefore, as in *Bryant Woods,* the Commission's decision was a final decision sufficiently concrete for judicial resolution. Accordingly, the court will not grant judgment or a new trial based on the ground that Plaintiffs' claims were not yet ripe.

### b. Qualified immunity

Defendants contend that Muchow should be qualifiedly immune because the court was wrong in stating, on summary judgment, that the "law was clearly estab-

lished since 1985 that public officials cannot administer a zoning system based on irrational prejudice about the mentally disabled." *Pathways*, 133 F.Supp.2d at 793, *citing City of Cleburne*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). They maintain that Plaintiffs failed to establish, and the court failed to analyze, whether it was clearly established to the degree of specificity required by *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), that Muchow violated Plaintiffs' rights.[5]

■■■■■ "Qualified immunity protects government officials from civil damages in a § 1983 action 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir.1999), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants are "entitled to summary judgment on the ground of qualified immunity if they can establish that reasonable officials could have believed that their actions were lawful in light of both clearly established law and the information that the officers possessed at the time." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The court inquires into the "objective legal reasonableness" of the actions; the officers' subjective beliefs are irrelevant. *Id.* at 639, 107 S.Ct. 3034. "In analyzing the applicability of a qualified immunity defense, we must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity." *Edwards*, 178 F.3d at 250–251 (citing cases). Defendants contend that it was

not clearly established in 1997 that, specifically, a Town Council member's exercise of his vote at a Council meeting would violate equal protection clause.

Under *Cleburne*, 473 U.S. 432, 448, 105 S.Ct. 3249 (1985), it was clearly established in 1997 that it is a violation of equal protection for government officials to take action against people with disabilities based on prejudice that the citizenry may harbor against them. Defendants argue that summary judgment is inappropriate because, thus defined, the rule does not frame the law "in light of the specific context of the case" and therefore fails to "put the officer on notice that his conduct would be clearly unlawful," *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. However, the Court recently clarified the level of specificity required for the purposes of qualified immunity in *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666, 70 USLW 4710 (2002), *quoting United States v. Lanier*, 520 U.S. 259, 270–271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997):

> "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell* [*v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 [ (1985) ]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.', *Anderson*, [483 U.S. at 640, 107 S.Ct. 3034]." Our opinion in *Lanier* thus makes clear that officials can still be on

---

**5.** In addition, Defendants argue that Plaintiffs failed to prove that Muchow committed a constitutional violation by reiterating their arguments rejected above regarding the purported failure of Plaintiffs to demonstrate

causation between Muchow's vote and the rescission and damages. For the same reasons, this argument fails as a basis for qualified immunity because Plaintiffs did prove that Muchow violated their rights.

notice that their conduct violates established law even in novel factual circumstances.

*Hope* suggests that the contours of the right do not have to be defined at the level of specificity demanded by Defendants, but rather reemphasizes that the standard is whether a reasonable officer would be on notice.

The rule from *Cleburne* has been applied in multiple contexts in this circuit and others where government officials have yielded to community fears. *See, e.g., Marks v. City of Chesapeake, Va.,* 883 F.2d 308, 311 (4th Cir.1989); *Sullivan v. City of Pittsburgh,* 811 F.2d 171 (3rd Cir.1987); *Horizon House Developmental Services, Inc. v. Township of Upper Southampton,* 804 F.Supp. 683, 699 (E.D.Pa.1992), *aff'd mem.,* 995 F.2d 217 (3rd cir.1993); *Oxford House–Evergreen v. City of Plainfield,* 769 F.Supp. 1329, 1343 n. 19 (D.N.J.1991). Further, when pressed in open court, Defendants were unable to suggest an articulation of this right focusing on the individual council member's role in rescinding the endorsement which was not already clearly established by *Cleburne* and its progeny. The right was clearly established to the extent that a reasonable officer in Muchow's position would be on notice. Accordingly, as reinforced by *Hope,* the court was correct in ruling that Muchow was not entitled to qualified immunity if the jury found, as it did, that a reasonable Council member in Muchow's position would not have acted as he did in motivating opposition and voting against Pathways' endorsement.

### 3. Compensatory damages against weight of evidence

■ Defendants contend that the court should grant a new trial because the economic damages of $540,916 awarded to Plaintiffs against Leonardtown was against the weight of evidence and does not comport with any combination of figures from calculations of Henry Fuentes, Plaintiffs' damages expert. In addition, they contend that Edwards award of $20,000 was excessive because it was solely for embarrassment and humiliation. "On an excessiveness challenge, we review a jury's determination of the amount of compensatory damages under the first two prongs of the Rule 59 standard: 'whether the jury's verdict is against the weight or the evidence or based on evidence which is false.'" *Knussman,* 272 F.3d at 639, *quoting Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294, 305 (4th Cir.1998) (internal quotations omitted).

■ The jury's award of economic damages was well within the figures presented by Fuentes. Fuentes testified about specific damage amounts and how he calculated them, and McGloin testified about damages caused by discrimination. The jury decided to award some, but not all, of the damages claimed by Plaintiffs, but that fact alone does not demonstrate that the jury pulled the figures out of thin air, as alleged by Defendants. Under these circumstances, the court should not upset the jury verdict. *Fox,* 247 F.3d at 181 (upholding jury verdict for half of claimed medical expenses). Accordingly, Pathways' compensatory damage award was not excessive and a new trial is not merited.

■ As to Edwards, courts tend to defer to a jury's award of damages for intangible harms, such as emotional distress, because such harm is subjective and depends considerably on the demeanor of the witness. *Fox,* 247 F.3d at 180. "Compensatory damages for emotional injuries are recoverable under § 1983." *Knussman,* 272 F.3d at 639, *citing Memphis Cnty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). ("[c]ompensatory damages may include not only out-of-pocket loss and other monetary

harms, but also such injuries as impairment of reputation ..., personal humiliation, and mental anguish and suffering"). In order to prove damages for emotional distress, a § 1983 plaintiff "must demonstrate that the emotional duress resulted from the constitutional violation itself." *Knussman,* 272 F.3d at 639, *citing Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Plaintiff must establish a nexus between the emotional distress and a constitutional violation, and this nexus is a factor in assessing whether a damage award is excessive. The court also looks to a number of factors when assessing excessiveness, such as psychiatric or psychological treatment, degree of mental distress, evidence corroborating the testimony of the plaintiff, physical injuries, and loss of income. *Id.,* at 640.

 While Defendants contend that Plaintiffs relied merely on conclusory statements by Edwards that she felt embarrassed, Defendants ignore Edwards' testimony describing the importance of receiving services in Leonardtown, how the remoteness of Pathways' current location inhibits her from carrying on interactions that might further her treatment, and the distress and stigmatization she felt upon learning that Leonardtown refused to permit Pathways' move downtown. It is difficult to determine the excessiveness of non-economic damage awards for emotional distress. *See Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1414 (4th Cir.1992) (upholding verdict against excessiveness challenge because of difficulty of measuring amount to compensate for emotional injuries from discrimination). Accordingly, because Edwards' testimony went beyond mere conclusory statements to describe specific aspects of emotional harm, the award was not so severe as to merit a new trial.

### III. Declaratory and injunctive relief

 Plaintiffs request an order declaring that Pathways' use fits within the C–G district in the current Leonardtown Zoning Ordinance. They argue that they are entitled to declaratory relief because the jury concluded that Pathways' proposed use fit within the C–G district under the 1997 Leonardtown Zoning Ordinance and the permitted uses in the C–G district have not changed since 1997. Further, Plaintiffs seek to enjoin Leonardtown from denying Pathways an occupancy permit for a building located in the C–G district for two years or from taking any actions to interfere with Pathways' relocation to downtown Leonardtown. Plaintiffs argue that without injunctive relief, Pathways will suffer irreparable harm, which, they contend, can be presumed from a violation of the ADA.

In contrast, Defendants contend that Plaintiffs' proposed declaration is inappropriate because the jury verdict only related to zoning in 1997 and, they argue, there is reason to believe Pathways' current use is different than in 1997 given the addition of a clinic. Defendants contend that the injunctive relief requested by Plaintiffs is unnecessary because economic damages already awarded Plaintiffs for losses they suffered. They argue that the procedures in place available to all applicants are sufficient to meet Pathways' asserted desire to move downtown. Pathways would, like all applicants, have legal recourse if treated in a discriminatory manner. Further, Defendants argue that the requested injunction is too broad because it is for two years without qualifications and would force the town to waive its zoning requirements entirely. According to Defendants, Pathways would have *carte blanche* to do whatever it wanted without regard to Leonardtown's interest in enforcing its

laws and the public interest in having Leonardtown enforce those laws.

■ As to Plaintiffs' desire for declaratory relief, there are not sufficient facts before the court to warrant the requested relief. In the hearing, Plaintiffs admitted that Pathways has now added a clinic, a component of the facility not in existence in 1997. While Defendants concede that the zoning ordinance has not changed since 1997, the court is not in a position to determine whether Pathways' current use is different from that in 1997 given the addition of the clinic. To the extent that Pathways' proposed use is congruent with that of 1997, the court will declare that it is a permitted use within the C–G zone because that definition has not changed, but does not have the facts before it to determine whether Pathways' current use fits that definition.

■ As to Plaintiffs' request for injunctive relief, the remedies available under Title II are the same as those available under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 784. *Layton v. Elder,* 143 F.3d 469, 472 (8th Cir.1998). In order to obtain injunctive relief under Title II of the ADA, "[o]nce a party has demonstrated actual success on the merits, the court must balance three factors to determine whether injunctive relief is appropriate: (1) the threat of irreparable harm to the movant; (2) the harm to be suffered by the nonmoving party if the injunction is granted; and (3) the public interest at stake." *Layton,* 143 F.3d at 472 (citing cases).

■ While Plaintiffs succeeded on the merits of their claim that Defendants violated Plaintiffs' rights under the ADA and 14th Amendment, the scope of their requested injunctive relief is too broad. When fashioning an equitable remedy for civil rights violations, courts are guided by general principles of equity, including "[t]he principle limitation ... that the relief should be no broader and no more burdensome than necessary to provide complete relief to the plaintiff." *Baltimore Neighborhoods, Inc. v. LOB, Inc.,* 92 F.Supp.2d, 456, 468 (D.Md.2000), *citing Milliken v. Bradley,* 433 U.S. 267, 279–280, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 766 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999).

Plaintiffs argue that injunctive relief is merited because irreparable harm can be presumed from a violation of civil rights' statutes such as the ADA. "We have held that where a defendant has violate a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 827 (9th Cir.2001) (citing cases); *see also Burlington N.R.R. Co. v. Dep't of Revenue,* 934 F.2d 1064, 1074 (9th Cir.1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief"); *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984) ("irreparable injury may be presumed from the fact of discrimination and violation of fair housing statutes").

However, while irreparable harm may be presumed, Plaintiffs have not demonstrated that the broad two year blanket injunction they request is necessary to prevent that harm. In the cases cited by Plaintiff above, defendants were enjoined from further violation of the Fair Housing Act over a period of time. In this case, the relief requested is much broader; that Defendants be enjoined for two years from interfering in any way with Pathways' relocation. As noted by Defendants, the result would be that the town would be powerless to enforce other regulations and

make Pathways comply with a variety of generally applicable restrictions that are in the public interest. This would be to give preferential treatment to people with disabilities, rather put them on equal footing as intended by Congress in passing the statute. *Smith v. Clarkton,* 682 F.2d 1055, 1068 (4th Cir.1982). Additionally, the requested injunction would interfere with Leonardtown's and the public's legitimate interest in the enforcement of Leonardtown's ordinances. Accordingly, the requested injunctive relief is not appropriate and will be denied.

### IV. Conclusion

For the foregoing reasons, the court will deny Defendants' motion for judgment under Rule 50 or, in the alternative, for new trial under Rule 59. Plaintiffs' motion for declaratory and injunctive relief will be granted in part and denied in part. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of August, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendants' motion for judgment as a matter of law under Fed.R.Civ.P. 50, or, in the alternative, for new trial under Fed. R.Civ.P. 59 BE, and the same hereby IS, DENIED;

2. IT IS DECLARED that, to the extent that the use of Pathways Psychosocial Support Center, Inc.'s facilities is congruent with their use in 1997, it is a permitted use in the Town of Leonardtown's Commercial–General zoning district;

3. Plaintiffs' motion for permanent injunctive relief BE, and the same hereby IS, DENIED; and

4. The Clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.