# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3119

DENNIS WALKER,

*Plaintiff-Appellant,*

v.

ABBOTT LABORATORIES,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 97 C 3882—**Harry D. Leinenweber**, *Judge.*

———————

ARGUED JULY 5, 2005—DECIDED JULY 29, 2005

———————

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

POSNER, *Circuit Judge.* The district judge granted summary judgment for the defendant in this suit charging racial discrimination in employment in violation of federal law. The plaintiff, Walker, who is black, is a National Accounts Manager (i.e., a sales manager) in the Hospital Products Division of Abbott Laboratories, the defendant. Walker was at salary grade 18. Two new positions as NAMs in that division opened up, but Abbott decided that someone appointed to one of these positions could, if his or her qualifications warranted, be given a salary grade of 20

rather than 18 although the duties would be the same. Walker wanted one of those jobs so that he could get the higher salary, but instead both jobs went to other people, one of whom was a white male named Smith. Walker claims, first, that Smith was ineligible for the job because the job posting stated that applicants must have a bachelor's degree, which Smith did not and so he must have been preferred for an invidious reason; and second, that Abbott's contention that Walker was ineligible for the job because he already was a NAM is spurious.

Abbott's position illustrates a tendency of some lawyers to pile on arguments without worrying about their consistency. On the one hand, Abbott argues that it was not required to adhere to the terms of the job posting. On the other hand, it argues that Walker was ineligible because someone who was already a NAM could not apply for one of the new positions even though they paid more. This makes it seem that Abbott complies with its personnel rules only when it wants to.

Indeed so. And there is nothing wrong with that. Unless a rule is part of the company's contract with its employees, the company is free to create exceptions to it at will. Rules by definition do not make a perfect fit with all the circumstances to which they apply; if they did, they would not be rules, but standards. A rule abstracts from particular circumstances, and if one of the excluded circumstances is salient in a particular case there is pressure to recognize an exception. A well-managed company will not make exceptions to its personnel rules promiscuously because that will generate ill will among the employees; they will feel they're being subjected to arbitrary treatment, which nobody likes. Wilbert E. Scheer, *Personnel Administration Handbook* 314-15, 965-69 (3d ed. 1985); Lin Grensing-Pophal, *Developing a Personnel Manual* 2 (1993); "HR101 Seminar: Consistency Is

Key to Successful Human Resources Management," *Business Voice Archives* (Mar. 2002), www.njbia.org/ bvmar02.htm; "Tackling Discrimination and Promoting Equality—Good Practice Guide for Employers," *ACAS*, http://www.acas.org.uk/publications/B16.html. But neither will a well-managed company adhere to its personnel rules with a rigidity blind to circumstances that may make the rule occasionally wholly inapt. "People in supervisory positions are not doing their best for the company if they are content to administer rules. Fairness, consistency, and demonstrated interest in employee problems are the backbone of supervisory morale building. . . . [N]o set of written policies should become a straitjacket on management thinking." Scheer, *supra*, at 315, 965.

Smith had only an associate's degree from college, but it was a degree in medical technology and he had 20 years of experience in the medical products industry. He was already at salary grade 19, supervising a sales team, and before being appointed a NAM was rated in the top one percent of sales managers in the Health Products Division. Walker, in contrast, though he indeed had a bachelor's degree (but had majored in political science rather than in anything to do with business or the medical field), had been working for Abbott for only six years and had not achieved a rating comparable to Smith's. He does not deny that his all-round qualifications for a higher salary grade were inferior to Smith's.

Which should end the case right there. When the better-qualified white worker is selected, and there is no evidence indicating racial discrimination, the employer is entitled to summary judgment. *Malacara v. City of Madison*, 224 F.3d 727, 730-31 (7th Cir. 2000); *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 364 (7th Cir. 1983) ("no rational enterprise that has several qualified candidates for a posi-

tion selects among them by lot; it picks the best qualified"). A plaintiff cannot be permitted to manufacture a case merely by showing that the employer does not follow its employment rules with Prussian rigidity. *Parker v. Baltimore & Ohio R.R. Co.*, 641 F. Supp. 1227, 1234-35 (D.D.C. 1986); see *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 287, 290 (2d Cir. 1999); *Briggs v. Anderson*, 796 F.2d 1009, 1024 (8th Cir. 1986); *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 659-60 (4th Cir. 2002) (dissenting opinion). For there is nothing to suggest discrimination in an employer's bending the rules to give the better job or the higher salary to the more qualified applicant. That is just good management.

It was silly for Abbott to argue that Walker was forbidden to apply for a grade 20 NAM position because he already held a grade 18 position. But it is the silliness of overlawyering rather than evidence of discrimination. Suppose Walker had vastly superior qualifications, and when Smith was hired for one of the new positions had gone to his boss and said that he, Walker, should get a grade 20 position because he was a star. In all likelihood, the boss would have acceded to the demand, even if it meant bending the rules in Walker's favor, as it would if both grade 20 NAM positions had been filled. The rules had *already* been bent in his favor, when he had first become a NAM, because the formal requirement is not just of a bachelor's degree but of a degree in business administration or a related field, and Walker's was not. Having gotten the benefit of flexible administration of company rules, he should not be heard to complain that a better-qualified worker also benefited from that flexibility.

There is a further reason, unrelated to "qualifications" in the normal sense, why the preferring of Smith gives rise to no inference of discrimination. Walker was already a NAM,

at grade 18; there was no need to pay him more in order to retain him in that position. But to induce Smith to become a NAM, the company had either to keep him at grade 19 or to give him a raise. It would have made no business sense to give Walker the 20 and order Smith to become a NAM at a lower wage than he was receiving in his present job. Smith would probably have quit.

The briefs dwell at length on the ubiquitous *McDonnell-Douglas* formula for establishing a prima facie case of discrimination and thus defeating summary judgment for the defendant. The formula has its place but does not displace the general standards for summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 697 n. 6 (7th Cir. 2001); *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) ("the summary judgment rule applies in job discrimination cases just as in other cases"). One of those standards is that a litigant is entitled to summary judgment if, should the case go to trial on the record compiled in the summary judgment proceedings, he would be entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). This is such a case. No reasonable jury, confronting this record, could infer that Smith got the grade 20 NAM position because he is white. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 459-60 (7th Cir. 1999); *Briggs v. Anderson, supra*, 796 F.2d at 1024.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*